823 P.2d 162

**WASHINGTON FEDERAL SAVINGS AND LOAN ASSOCIATION, a federally chartered savings association, Plaintiff–Counterdefendant–Respondent,**

v.

**Toni A. LASH, an individual, d/b/a Toni A. Lash & Co. Realtors, Defendant–Counterclaimant–Appellant.**

**No. 18810.**

Supreme Court of Idaho,
Boise, November 1991 Term.

Jan. 8, 1992.

E. Lee Schlender, Hailey, for defendant-counterclaimant-appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-counter defendant-respondent. John F. Kurtz, Jr. argued.

McDEVITT, Justice.

This is a dispute over a real estate commission. Washington Federal Savings & Loan brought a declaratory action to determine the status of a contract for the sale of real property. The district court granted summary judgment in favor of the plaintiff and dismissed the defendant's counterclaim. We reverse and remand.

The defendant, Toni Lash, is a realtor in the Blaine County area. Washington Federal Savings & Loan ("Washington Federal") owned 2.38 acres in Ketchum, Idaho that its predecessor in interest had acquired through foreclosure. On December 5, 1987, Ms. Lash met with Don Alloway, an agent for Washington Federal, concerning the purchase of the property. Ms. Lash and Mr. Alloway entered into a purchase and sale agreement ("the agreement") with Washington Federal as seller and Ms. Lash as buyer.

The purchase and sale agreement had been prepared by Lash prior to meeting with Alloway. Before signing the agreement, Alloway wrote in the margin that the sale was *"[s]ubject to buyer qualifying for financing and approval of the Washington Federal Board of Directors. Buyer to apply for financing prior two [sic] 12/17/87."* The agreement also stated that Washington Federal was to *"indemnify BUYER against any encroachment on subject property...."* The agreement also contained a provision providing for payment of a commission of 10% of the purchase price to Ms. Lash upon closing. On December 31, 1987 the parties entered into an extension agreement substituting Terry Smith ("Smith") as buyer for Toni Lash. The closing date was also extended to January 29, 1988 but all other provisions of the original agreement were to remain the same.

At the time of the original negotiations, both Alloway and Lash knew that a fence was encroaching upon the property and that there might be other encroachments, so a survey of the property was ordered. The survey revealed various encroachments upon the property, including walkways, a parking lot, a hot tub, a linen and laundry building, a dumpster, lampposts and more, most being attributable to an adjoining condominium. Washington Federal proceeded to try and clear up these encroachments with the neighboring condominium homeowners association. Washington Federal asserted that until these encroachment problems were resolved, it would not close the transaction. Washington Federal sent a letter to Ms. Lash on January 21, 1988, indicating that its board of directors had not approved the contemplated sale due to these encroachments. Washington Federal maintained that the sale and purchase agreement was void for failure of a condition precedent, namely, the board of directors' approval of the sale.

Washington Federal filed a complaint against Ms. Lash, Smith and a Mr. Burgess on October 4, 1988.[1] Washington Federal

1. It is unclear how and when Mr. Burgess be-

came a party to the transaction. It appears that

sought a declaratory judgment determining that the purchase and sale agreement was void. Ms. Lash counterclaimed for the real estate commission.

Subsequent to the filing of the complaint, Washington Federal, Smith and Burgess entered into a settlement agreement. The agreement declared the purchase and sale agreement and its amendment to be null and void. Washington Federal agreed to sell, and Smith and Burgess agreed to purchase the property for $500,000, subject to the encroachments.

Washington Federal and Ms. Lash continued to dispute the real estate commission. Upon cross motions for summary judgment, the trial court determined that the agreement between the parties was null and void and therefore, there was no basis for allowing a real estate commission. Ms. Lash appeals from this determination.

The issue we address in this appeal is whether summary judgment was proper. In an appeal from a motion for summary judgment, this Court's standard of review is the same as the standard used by the trial court in passing upon a motion for summary judgment. *McDonald v. Paine,* 119 Idaho 725, 810 P.2d 259 (1991); *Meridian Bowling Lanes v. Meridian Athletic,* 105 Idaho 509, 670 P.2d 1294 (1983). All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted. *Treasure Valley Bank v. Butcher,* 117 Idaho 974, 793 P.2d 206 (1990); *Doe v. Durtschi,* 110 Idaho 466, 716 P.2d 1238 (1986); *Farmers Insurance Company of Idaho v. Brown,* 97 Idaho 380, 544 P.2d 1150 (1976). The burden of proving the absence of material facts is upon the moving party. *Petricevich v. Salmon River Canal Co.,* 92 Idaho 865, 452 P.2d 362 (1969). A mere scintilla of evidence is insufficient to create a material issue of fact. *Id.* Judgment shall be rendered if the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact. I.R.C.P. 56(c); *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982).

he is involved with Smith in purchasing the

Most of the confusion over the agreement concerns the handwritten clause that Alloway added on the margin of the agreement. It states:

1. Subject to buyer qualifying for financing and approval of the Washington Federal Board of Directors. Buyer to apply for financing prior two [sic] 12/17/87.

This clause was added apparently as part of the clause containing the financing terms. This clause can be read as one clause, that is, buyer is subject to qualifying for financing, which financing must be approved by the board of directors. Or, it can be read as two clauses, the first is that the agreement is subject to the buyer qualifying for financing and the second is that the whole agreement is subject to approval by the Board.

Both Lash and Alloway differ on what was intended by this clause. In the deposition of Ms. Lash, the following exchange occurred:

Q. [By Mr. Kurtz] Did you understand that the transaction needed to be approved by the Washington Federal Board of Directors?

A. [By Ms. Lash] No. I understood Mr. Smith had to be approved. And I asked Mr. Alloway and he said, "Yes, Mr. Smith has to be approved by the Board of Directors because we're lending him $400,000."

\*　　\*　　\*　　\*　　\*　　\*

Q. Do you recall ever talking to Mr. Burgess abut the language that Mr. Alloway had handwritten on Exhibit No. 2?

A. To Mr. Burgess?

Q. Yes.

A. I discussed the fact that Terry had to qualify and, of course, he could see that. And he was qualified by the bank. They had approved of him.

\*　　\*　　\*　　\*　　\*　　\*

Q. Do you recall having a conversation with Mr. Burgess about the handwritten language contained on Exhibit No. 2 [the property.

purchase and sale agreement] that Mr. Alloway wrote on the agreement?

A. Well, as I just told you, I discussed with him the fact that Terry was going to have to qualify. That didn't surprise Terry or John.

\* \* \* \* \* \*

Q. Have you ever expressed to Mr. Burgess or Mr. Smith what you believe the language means that was handwritten by Mr. Alloway on Exhibit No. 2?

A. Yes, I understood it to mean that Terry had to be approved by the Board of Directors. As I told you before, our conversation with Mr. Alloway at the time he executed the agreement was I said to him, "Do you mean that Terry has to be approved of by the Board of Directors?" And he said, "Yes, he does. Wouldn't you want to if you were going to lend someone $400,000?"

From this exchange, it seems clear that Ms. Lash understood that the approval of the Board of Directors was necessary only for the financing. She did not think that the Board of Directors had to approve the whole transaction.

In contrast, Mr. Alloway stated in his deposition that:

I intended and discussed with Toni Lash and Fred Rogers at the time, that they meant that the Board had to approve the entire sale transaction, including the price and terms. And in addition to that, the Board needed to approve the credit involved in any financing that was part of the transaction. There were two separate things.

\* \* \* \* \* \*

Because I thought that all along we had an agreement that the initial real estate purchase and sale agreement was subject to Board approval and the Board would not approve that until Toni Lash and any other partners that she had and I had agreed upon the nature of the encroachments and whether or not they would be acceptable. . . .

Throughout his deposition, Mr. Alloway refers to this belief that it was necessary for the Board to approve the entire sales transaction.

It is apparent that the agreement entered into by the parties is not clear and unambiguous. From the record before us, it is impossible to determine what the parties contemplated in drafting and signing the purchase and sale agreement. The trial court erred in granting summary judgment.

We reverse and remand for proceedings consistent with this opinion.

Costs to appellant.

BAKES, C.J., and BISTLINE, JOHNSON and BOYLE, JJ., concur.