7 P.3d 1110

**EAGLE WATER COMPANY, INC., an Idaho corporation, Plaintiff–Appellant,**

v.

**ROUNDY POLE FENCE COMPANY, INC., an Idaho corporation; Doug Roundy, an individual; and Does I through V, Defendants–Respondents.**

No. 24206.

Court of Appeals of Idaho.

March 4, 1999.

Rehearing Denied April 28, 1999.

Review Granted Aug. 3, 1999.

---

Vernon K. Smith, Jr., Boise, for appellant.

Thomas G. Maile IV, Boise, for respondents.

SCHWARTZMAN, Judge.

This case involves a dispute over an amount alleged to be due and owing from Roundy Pole Fence Company for its lease of a tractor from Eagle Water. The magistrate granted the respondents' motion for summary judgment, holding that the claim was barred by the four-year statute of limitation found in either I.C. § 5–217 or § 5–224. We affirm.

## I.

### FACTS AND PROCEDURE

In early 1991, Eagle Water Company, Inc. (Eagle Water) twice leased a front loader owned by Roundy Pole Fence Co., Inc. (Roundy Pole). Eagle Water was billed a total of $1,725, but did not immediately pay the bill. In July of 1991, Doug Roundy (Roundy), an officer of Roundy Pole, approached Robert DeShazo, an officer of Eagle Water, and requested the use of Eagle Water's John Deere 450C tractor. Although the parties acknowledge that there was an agreement which allowed Roundy to use the tractor, they do not agree on the terms of that agreement.[1] The tractor was obtained by Roundy sometime in July of 1991 and

---

1. DeShazo asserts that Roundy Pole was to use the tractor for two weeks and would pay $25 an hour for its use. Roundy claims that there was never an agreement to pay an hourly rental fee, but rather the use of the tractor was offered in satisfaction of Eagle Water's outstanding debt to Roundy Pole.

returned no later than November 15, 1991.[2] Upon its return, the tractor's hour meter reflected 496.5 hours of use.

On December 30, 1991, Eagle Water billed Roundy Pole for its use of the tractor at a rate of $25 an hour. This bill included a credit allotted to Roundy Pole for $1,811.25, the amount Eagle Water owed for its use of the front loader, plus interest. Doug Roundy objected to this bill. A second bill was then sent which adjusted the fee to a monthly rental rate of $2,450, resulting in a $9,800 charge, less the $1,811.25 credit, for an amount due of $7,988.75. The parties disagree as to whether there was an express agreement to convert the rate to the monthly fee. Bills reflecting the monthly rental rate were subsequently sent to Roundy Pole on June 30, and August 13, 1992. DeShazo then wrote to Roundy attempting to clarify any misunderstanding on the billing and resolve the dispute. Thereafter, Eagle Water continued to intermittently send bills which contained the monthly rate and added 12 percent interest through April 17, 1995.[3] On September 18, 1995, Eagle Water's attorney sent a letter to Roundy Pole requesting payment. The record does not reveal any formal response to this letter.

Never having received payment, Eagle Water filed a verified complaint on December 15, 1995, alleging mutual open trade accounts with a principal credit balance of $7,988.75 still due and owing to it. A single verified answer was filed for all defendants, who then moved for summary judgment. To support the motion for summary judgment, the defendants also filed an affidavit by Douglas Roundy and an affidavit by their attorney. Attached to counsel's affidavit was a portion of DeShazo's previously taken deposition, along with copies of the bills and documents sent to Roundy Pole by Eagle Water in an attempt to recover the money allegedly owed. Eagle Water did not file any docu-ments or affidavits in opposition to the motion for summary judgment. Following a hearing, the magistrate found that,

> the "time of the last item" referred to in I.C. 5–222 [4] occurs on the completion of the last transaction between the parties, which in this case occurred not later than November 15, 1991, the date Plaintiffs' [sic] John Deere Crawler Dozer was returned to Plaintiff, according to Plaintiff's invoices. Plaintiff's complaint was filed on December 15, 1995, which is beyond the four year limitation provided either by I.C. 5–217 or I.C. 5–224. Accordingly, summary judgment is hereby granted in favor of the Defendant and against the Plaintiff.

The magistrate then dismissed the case with prejudice, reserving the issue of costs and attorney fees. Eagle Water appealed this order to the district court. The magistrate then filed an amended judgment which awarded the defendants both costs and attorney fees, from which Eagle Water also appealed. Acting in its appellate capacity, the district court upheld the order of summary judgment and the award of costs and attorney fees and further awarded the defendants-respondents both costs and attorney fees on appeal. Eagle Water again appeals.

## II.

## STANDARD OF REVIEW

When faced with an appeal from a summary judgment, this Court employs the standard of review properly applied by the trial court when originally ruling on the motion. *East Lizard Butte Water Corp. v. Howell,* 122 Idaho 679, 681, 837 P.2d 805, 807 (1992); *Washington Fed. Sav. & Loan Ass'n v. Lash,* 121 Idaho 128, 130, 823 P.2d 162, 164 (1992). In order to determine whether judgment should be entered as a matter of law, the trial court must review the pleadings, depositions, affidavits, and admissions on file. I.R.C.P. 56(c). On review, as when the judg-

---

2. Although the parties disagree on the actual day of return, they have agreed to accept the date of November 15, 1991, for purposes of this appeal.

3. During this period DeShazo had been advised by several of his employees that Roundy Pole was not going to pay the bill.

4. I.C. 5–222 states, "In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action is deemed to have accrued from the time of the last item proved in the account on either side."

ment is initially considered by the trial court, this Court liberally construes the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences and conclusions in that party's favor. *Tolmie Farms v. J.R. Simplot Co., Inc.*, 124 Idaho 607, 609, 862 P.2d 299, 301 (1993).

## III.

### THE TRIAL COURT CORRECTLY FOUND THAT THE STATUTE OF LIMITATION ON A MUTUAL OPEN AND CURRENT ACCOUNT BEGAN TO RUN ON THE DATE THE LAST TRANSACTION BETWEEN THE PARTIES WAS COMPLETED

Roundy Pole asserts that this action was untimely because the tractor was returned on November 15, 1991, and the complaint was filed more than four years later, on December 15, 1995. Eagle Water disagrees, arguing that the complaint was properly filed within four years of December 30, 1991, the date of the original billing for use of the tractor.[5] We find that the lower court properly held that any cause of action on a mutual, open and current account accrued upon completion of the final transaction between the parties, and that any action brought under this theory is barred by the four-year statute of limitation found in I.C. §§ 5–217 or 5–224.

### A. The Parties Originally Maintained Mutual Open Accounts

The record contains documentation showing that Eagle Water and Roundy Pole each leased equipment to and from the other, accepting the use of the other's equipment as payment on the amount due for prior leases. Each party also kept their accounts open to cover future debits and credits resulting from the use of the equipment.

[A]n open account is simply an account with a balance which has not been ascertained. The account is kept open in anticipation of future transactions. Where an open account exists the parties are deemed to intend that individual items on the account will not be viewed separately but that the account will be considered as a connected series of transactions. When an open account is unilateral—that is, with all charges made by one party against the other—the majority rule appears to be that a statute of limitation will run from the date of each item. But if an open account is mutual—with both parties charging each other—the courts have treated the statute of limitation as running from the date the last item proven by either party.

*Kugler v. Northwest Aviation, Inc.*, 108 Idaho 884, 887, 702 P.2d 922, 925 (Ct.App.1985). Accordingly, the business relationship maintained by the parties gave rise to mutual open accounts.

### B. The Time Of The Last Item, As Referred To In I.C. § 5–222, Is The Time Of The Completion Of The Last Transaction Between The Parties

Pursuant to I.C. § 5–222, an action on a mutual, open and current account accrues at "the time of the last *item* proved in the account on either side." (emphasis added). However, the code does not define the term "item." Eagle Water argues that the last item on the account is the accounting entry representative of the final transaction completed by the parties. Notwithstanding this assertion, Roundy Pole maintains that the last item is not the account entry, but rather the last transaction itself. Thus, the time of the last item proved must be established in order to determine when this action accrued and whether the complaint was timely filed within the four-year limitation period dictated by I.C. §§ 5–217 or 5–224.

■ The principle behind I.C. § 5–222 finds its origins in the English common law. Its rationale, simply stated, is that any act which may be considered an admission of an open account will take the entire account out of the statute of limitation. *See* J.K. ANGELL,

5. There were two different bills sent for the tractor's use. The original bill, based upon an hourly rental rate, was dated December 30, 1991. Following Roundy's disapproval of the hourly rate, a second bill was sent based upon a monthly rate. For accounting purposes Eagle Water backdated this second bill to December 30, 1991.

A Treatise on the Limitations of Actions At Law and Suits in Equity and Admiralty, ¶ 143–51 (John Wilder May ed., 5th ed. 1869). This rationale supports the proposition that the "item" to which the statute refers to is the underlying transaction. Here, Roundy Pole's use of the tractor in lieu of a cash payment can be deemed an admission of an unsettled account between it and Eagle Water. However, Eagle Water's unilateral act of making an accounting entry in its own books cannot be regarded as an admission by Roundy Pole of an ongoing account or of an amount due. Ultimately, only an act in which the parties participate can be deemed an admission which restarts the running of the statute of limitation. This leads to the conclusion that the final transaction is the last "item" referred to in I.C. § 5–222. *See also Beane v. Bowden,* 399 So.2d 1358 (Miss. 1981) (finding that the true date of the last item proved on the account was the date of the last transaction between the parties).

Idaho precedent supports use of the underlying transaction as the relevant "item." In *McCarthy v. Paris,* 46 Idaho 165, 267 P. 232 (1928), the Idaho Supreme Court determined that the relationship between an employer and employee gave rise to a mutual, open and current account. It then found that the last item on the account was *a check* given by the employer to the employee. *Id.* at 173, 267 P. at 233. Notably, the court focused on the physical item delivered, and did not mention an account entry, an adjustment of the account balance, or any credit on the account which occurred as a result of the delivery of the check. The court also noted that within the special context of continuous employment for an indefinite term, the statute of limitation does not begin to run until the "service ends." *Id.*

■ Accordingly, history and precedent suggest that the appropriate definition of the term "item" is the final underlying transaction. This interpretation conforms with the admission rationale which gave rise to the statutory language and is in harmony with case law. The four-year statute of limitation found in I.C. §§ 5–217 or 5–224 began to run on November 15, 1991. This action was filed more than four years after that date. We

therefore affirm the magistrate's decision granting summary judgment to the defendants-respondents on Eagle Water's cause of action based upon a mutual, open and current account.

## IV.

## EAGLE WATER'S OTHER CLAIMS

■ Eagle Water raises several other issues on appeal including whether the magistrate court erred when it entered a judgment dismissing the action with prejudice, and a number of claims regarding the award of attorney fees. Although listed as issues presented, Eagle Water did not support the claims in its brief with either argument or authority. Therefore, we find that Eagle Water waived these issues on appeal. *See State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Moreover, the respondents requested costs and attorney fees pursuant to I.C. § 12–120 and 12–121 which were granted by the magistrate court. Attorney fees are *mandatory* for actions to recover on open accounts under I.C. 12–120(3). Costs are also allowed as a matter of right pursuant to I.R.C.P. 54(d)(1). Therefore, the trial court did not err in awarding costs and attorney fees to the respondents as the prevailing parties.

## V.

## ATTORNEY FEES ON APPEAL

■ Idaho Code § 12–120(3) mandates an award of attorney fees to the prevailing party in any civil action to recover on an open account. So too, I.C. § 12–120(3) has been interpreted to authorize the award of attorney fees on appeal as well as at trial. *J.R. Simplot Co. v. Chemetics International, Inc.,* 130 Idaho 255, 258, 939 P.2d 574, 577 (1997); *Farm Credit Bank of Spokane v. Stevenson,* 125 Idaho 270, 275, 869 P.2d 1365, 1370 (1994). When properly asserted in the first appellate brief filed by a party, I.A.R. 41 provides for an award of attorney fees on appeal. In the instant case, the respondents have again prevailed and also asserted a claim for attorney fees. Accordingly, we af-

firm the district court's award of attorney fees on the intermediate appeal and award attorney fees on this appeal.

## VI.

### CONCLUSION

We affirm the granting of the respondents' motion for summary judgment and the lower courts' awards of attorney fees and costs.

We further award the respondents both costs and attorney fees on appeal.

Chief Judge PERRY and Judge Pro Tem BENGTSON concur.