141 P.3d 1073

**Jean Wheeler HAYES, individually and on behalf of the Estate of Melvin Lee Hayes, deceased; Colin Hayes and Marcy Moad, Plaintiffs–Appellants,**

v.

**UNION PACIFIC RAILROAD COMPANY, a Utah corporation, Defendant–Respondent.**

No. 31764.

Supreme Court of Idaho,
Boise, May 2006 Term.

July 28, 2006.

Cooper & Larsen, Chtd., Pocatello, for appellants. M. Anthony Sasser argued.

Kent W. Hansen, Salt Lake City, Utah, for respondent.

TROUT, Justice.

This case involves a wrongful death action following a collision between an automobile driven by the decedent, Melvin Hayes (Hayes), and a Union Pacific Railroad (UPR) train. Appellants Jean Hayes, the surviving spouse, and Colin Hayes and Marcy Road, the surviving children (collectively the Hayes family), appeal from a district court decision granting summary judgment in favor of UPR.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 2001, Hayes was killed in a collision when his vehicle crossed the railroad tracks and was struck by a UPR train at a railroad crossing in Minidoka County. The crossing is located less than 2 miles from Hayes' home and he had driven over the crossing many times over the past 42 years. There was at least some evidence that at the time of the accident, visibility was reduced due to heavy fog in the area, although UPR disputes that there was fog at the accident site. The road was also icy.

A dirt and gravel roadway runs in a generally north/south direction and the railroad tracks run in an east/west direction. Hayes was driving southbound toward the crossing and the train approached from the east. The crossing was protected by a yellow railroad "advance warning" sign, located approximately 583 feet north of the crossing; standard railroad crossbuck signs, located at the northeast and southwest corners of the intersection; and a red stop sign located at the crossing for southbound traffic. No active warning device, such as flashing lights or an automatic gate, was in place at the time of the accident.

Approximately ¼ mile before the crossing is a "whistle board" which signals the train's crew to begin sounding the train's horn or bell. At the whistle board, the train crew began blowing the standard crossing signal of two longs blasts, followed by a short blast and another long one and also activated the bell on the lead locomotive. As the train approached the crossing it was traveling at approximately 60 m.p.h.

The only eyewitnesses to the accident were UPR engineer, Timothy Tripple and conductor, Jerry Winterbottom. Tripple testified that approximately 100 feet before the train reached the crossing, Tripple realized Hayes' vehicle was failing to stop at the stop sign, at which time Tripple activated the train's emergency braking system. Tripple testified it appeared Hayes locked his brakes and slid onto the track into the train's path.

The Hayes family brought suit against the Minidoka County Highway District, which was subsequently dismissed from the suit, and against UPR, claiming that it was negligent in a number of different aspects. UPR made a motion for partial summary judgment and, in the alternative, for summary judgment on the entire claim. The district judge ruled specifically on each of the issues raised by UPR in the partial summary judgment and then granted summary judgment in favor of UPR dismissing the case in its entirety. The Hayes family appeals from the dismissal of their wrongful death action against UPR.

## II.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment by using the same standard properly employed by the district court originally ruling on the motion. *Samuel v. Hepworth, Nungester Lezamiz,*

*Inc.,* 134 Idaho 84, 87, 996 P.2d 303, 306 (2000). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). This Court construes the record in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of that party. *Samuel,* 134 Idaho at 87, 996 P.2d at 306. If the evidence reveals no genuine issue as to any material fact, then all that remains is a question of law over which this Court exercises free review. *McCuskey v. Canyon County Comm'rs,* 128 Idaho 213, 215, 912 P.2d 100, 102 (1996).

## III.

### ANALYSIS

The Hayes family alleges the district court erred in dismissing their negligence claims against UPR, maintaining UPR was negligent in the way the train crew used the horn as a warning device, for exceeding the internally imposed speed restrictions and for failing to provide additional warning devices at the allegedly extra hazardous crossing. The Hayes family also argues the district court erred in finding Hayes negligent as a matter of law.

### A. Use of horn

The Hayes family argues UPR was negligent because it: (1) failed to blow a required emergency whistle pattern prior to the collision; (2) breached its common-law duty to relocate the horn to the front of the train to provide a better alerting sound to Hayes and (3) violated Idaho Code § 62–412, which requires trains to sound their bell or whistle where the railroad crosses a public roadway.

■ First, the Hayes family argues the train crew should have switched to an emergency whistle pattern in anticipation of striking Hayes and failure to do so constitutes negligence. They submitted testimony from their expert, Dr. David Lipscomb, who concluded an emergency pattern would have increased the alerting capability of the device by increasing the decibel output by 5 decibels. He also admitted, however, that sounding the emergency pattern *alone* would not

have provided an alerting signal to Hayes until less than one second before the accident and, therefore, would have had made no difference in preventing the collision. The district judge correctly noted the whistle pattern would have made no difference.

■ Second, for the emergency whistle pattern to have made a difference in alerting Hayes, Dr. Lipscomb conceded the horn would have needed to be relocated to the front of the locomotive to further increase the sound decibel level. Thus, the Hayes family argues that UPR had a common-law duty to relocate the horn to provide a better alerting sound at the crossing. The only basis the Hayes family alleges for reconfiguring the horn is that it would make the horn louder. Their expert stated:

A combination of emergency sounding and increased horn sound level by placing the horn on the front of the cab would offer at least 16.1 dB greater warning sound level .... this failure robbed Mr. Hayes of an acoustical warning that would enhance his opportunity to avoid a collision with the locomotive.

Regulating the sound level emitted from a locomotive's horn is expressly preempted by federal law. The Code of Federal Regulations expressly sets forth the minimum and maximum decibel level requirements for locomotive horns:

(a) Each lead locomotive shall be provided with an audible warning device that produces a minimum sound level of 96dB(A) and a maximum sound level of 110 dB(A) at 100 feet forward of the locomotive in its direction of travel. The device shall be arranged so that it can be conveniently operated from the engineer's usual position during operation of the locomotive.

49 CFR § 229.129(a).

Adding an additional 16.1 dB to provide a greater warning to Hayes would result in the horn exceeding the decibel standards imposed by federal law. Thus, we agree with the district court that sound level and the claim based on relocation of the horn to increase the horn's sound level are preempted by federal law.

■ Finally, the Hayes family asserts the horn signaling failed to comply with I.C. § 62–412 because it was only blown for 50% or less of the time from the first sounding. I.C. § 62–412 provides, in pertinent part:

A bell of at least twenty (20) pounds weight must be placed on each locomotive engine, and be rung at a distance of at least eighty (80) rods from the place where the railroad crosses any public street, road or highway, and be kept ringing until it has crossed such public street, road or highway; *or* an adequate steam, air, electric or other similar whistle must be attached, and be sounded, except in cities, at the like distance, and be kept sounding at intervals until it has crossed the same. . . .

(emphasis added).

There is no per se violation of I.C. § 62–412, which simply requires the whistle to be sounded "at intervals" until it has crossed the public road. Moreover, the statute requires *either* a bell be rung through the crossing *or* a whistle sounded at intervals. In this case, the train crew activated the bell located on the lead locomotive and the horn, at or before the whistle board. The standard crossing signal, which the train crew blew, complies with I.C. § 62–412. We affirm the district court's conclusion that the Hayes family has not proven a violation of I.C. § 62–412.

## B. Excessive speed

■ Although there is no indication that the locomotive ever exceeded federal speed restrictions, the Hayes family argues UPR was negligent because it exceeded its own internally imposed speed limits, which were imposed by UPR because of the type of cargo being carried by the train and varied terrain. It appears from records maintained for the train that it exceeded the internally imposed speed limit at a point twelve minutes prior to the accident and at another point thirty-eight miles before the accident. The Hayes family argues that but for the train speeding at these points, it would not have arrived at the crossing at the same time as Hayes did and he would have had ample time to cross the tracks. The district judge concluded that speed limits are pre-empted by federal law and cannot be the basis for a claim against UPR. There is no question

here, however, about whether the train exceeded the federally imposed limit; it did not. Instead, the Hayes family argues that UPR was negligent because it exceeded the specially imposed limit for this train.

■ This argument ignores the foreseeability element of proximate cause. "Proximate cause consists of two factors, cause in fact and legal responsibility." *Marias v. Marano,* 120 Idaho 11, 813 P.2d 350 (1991); *See Doe I v. Sisters of the Holy Cross,* 126 Idaho 1036, 895 P.2d 1229 (Ct.App.1995). The "legal responsibility element of proximate causation is satisfied if at the time of the defendant's negligent act the Appellant's injury was reasonably foreseeable as a natural or probable consequence of the defendant's conduct." *Doe,* 126 Idaho at 1041, 895 P.2d at 1234. "Only when reasonable minds could come to but one conclusion as to whether the Appellant's injury was reasonably foreseeable may the judge decide this legal responsibility issue as a matter of law." *Id.*

It is not reasonably foreseeable that slight increases (or decreases, for that matter) in speed either twelve minutes or thirty-eight miles prior to the accident would result in the train arriving at the crossing at the exact time that Hayes' truck was on the tracks and thus cause an accident. The same argument could be made that had the train never left that day, the accident would not have been caused. Thus, as a matter of law, UPR's conduct was not the proximate cause of the accident and we affirm the district court's decision dismissing the excessive speed claim.

## C. Ultra hazardous crossing

■ The Hayes family argues the train crossing was extra hazardous and thus the railroad has a common-law duty to provide additional safeguards at the crossing. In *CSX Transportation, Incorporated v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the United States Supreme Court held that regulations adopted by the Secretary of Transportation under the Federal Railroad Safety Act do not preempt state common law negligence claims regarding a railroad's duty to maintain warning devices at railroad crossings. A railroad has

a duty to provide such warnings and safeguards at its crossings as a reasonably prudent person would demand under the circumstances, and a failure to do so constitutes negligence. *Whiffin v. Union Pacific Railroad Co.*, 60 Idaho 141, 156, 89 P.2d 540, 546–7 (1939).

For purposes of ruling on the summary judgment motion, the district judge assumed the crossing to be extra hazardous, but then concluded "[e]ven if the crossing is extra hazardous, this Court does not find it to be the proximate cause of the accident." The court then made the factual finding that "[w]hile extra warnings such as automatic warning devices or flashing lights may have helped prevent this accident, no reasonable view of the facts would suggest it would outweigh [Hayes'] negligence." "In considering a summary judgment motion, it is not the function of the trial court, or of this Court, to weigh the evidence." *Jones v. Runft, Leroy, Coffin & Matthews, Chartered*, 125 Idaho 607, 612, 873 P.2d 861, 866 (1994). The district judge acknowledged that UPR might have had some responsibility in preventing this accident, but then improperly weighed the comparative negligence of Hayes and UPR in concluding that Hayes was more negligent. That is not appropriate on summary judgment.

Here, the record includes testimony that, for various reasons, the crossing is extra hazardous and therefore merits additional safety features, e.g., automatic gates. If automatic gates had been installed, the Hayes family asserts Hayes would have more likely stopped and the accident would not have occurred. In response, UPR maintains that none of the allegedly extra hazardous conditions set forth as a basis for installing automatic gates were a proximate cause of this particular accident. This argument is unpersuasive. Whether and to what extent UPR was negligent and whether that contributed to the accident are matters best left to a jury for determination. The Hayes family is not arguing any one specific factor contributing to the extra hazardous nature of the crossing was a proximate cause of this accident. Rather, that taking into consideration all of these factors, the crossing was extra dangerous and UPR had a heightened duty of care to provide additional safeguards. They ar-gue it was breach of this duty which was a proximate cause of the accident.

It is up to the jury to decide whether there are things about the intersection that would require a prudent railroad to install additional warning devices and whether these warning devices may have prevented Hayes from sliding/driving onto the railroad track. *See Orthman v. Idaho Power Co.*, 130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997) ("Whether the duty attaches is largely a question of fact as to the foreseeability of the risk.") (quoting *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 300, 796 P.2d 506, 509 (1990)).

### D. Hayes' negligence

The district court concluded Hayes was negligent as a matter of law, stating "all reasonable minds would construe the actions of Mr. Hayes to be negligent." Based upon the fact that Hayes' truck ended up on the railroad track as a result of either not being able to stop at the stop sign or failing to yield at the stop sign, under Idaho's motor vehicle statutes, we agree Hayes was negligent as a matter of law. The extent of Hayes' negligence, however and how it compares to the potential negligence of UPR are for the jury to determine.

### IV.

### CONCLUSION

We affirm in part the district court's decision as indicated in this opinion but we vacate the grant of summary judgment and we remand the case for further proceedings consistent with this opinion. We award costs on appeal to the Hayes family.

Chief Justice SCHROEDER and Justices EISMANN and BURDICK and Justice Pro Tem KIDWELL concur.