**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 33966**

| | |
|---|---|
| CURTIS "JAY" JOHNSON, ) | |
| ) | **2009 Opinion No. 25** |
| Plaintiff-Appellant, ) | |
| ) | **Filed: April 8, 2009** |
| v. ) | |
| ) | **Stephen W. Kenyon, Clerk** |
| MIKE McPHEE and JCAV, LLC, ) | |
| ) | |
| Defendants-Respondents. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

Order granting summary judgment, <u>affirmed in part</u> and <u>vacated in part</u>, and <u>case remanded</u>.

Curtis "Jay" Johnson, Coeur d'Alene, pro se appellant.

Ian D. Smith, Coeur d'Alene, for respondent Mike McPhee.

Stephen B. McCrea, Coeur d'Alene, for respondent JCAV, LLC.

_____

LANSING, Chief Judge

Curtis "Jay" Johnson appeals pro se from the district court's orders of summary judgment dismissing his claims for breach of contract, negligence, and intentional and negligent infliction of emotional distress. We affirm the dismissal of all claims except that for negligent infliction of emotional distress. As to that cause of action we vacate the summary judgment and remand.

**I.**

**BACKGROUND**

At various times pertinent to this appeal Johnson was a licensed real estate agent doing business in the Coeur d'Alene area. Mike McPhee was engaged in the business of real estate development involving both residential and commercial properties. Prior to the events underlying this action, Johnson and McPhee were social acquaintances and had worked together on at least one real estate project. JCAV, LLC, was a limited liability corporation also engaged

1

in real estate development. Johnson alleges that, with respect to transactions underlying this lawsuit, McPhee was a principal in or otherwise acting as an agent of JCAV.

Johnson alleges that sometime in 2003, McPhee told Johnson of McPhee's plans to develop a subdivision around a manmade lake and asked Johnson to find land suitable for such a development and to help negotiate the purchase of the property. According to Johnson, McPhee refused to sign a commission agreement, but he and McPhee orally agreed that Johnson would perform these services and would be paid a commission. JCAV ended up purchasing land in coordination with McPhee and used it to develop a subdivision that became known as Radiant Lake Estates. Johnson claims that he located the land that was ultimately purchased for the subdivision and helped to negotiate the purchase on JCAV's and McPhee's behalf, but McPhee and JCAV rebuffed Johnson's repeated demands for payment of his claimed commission. Johnson therefore alleges that McPhee and JCAV breached an oral contract to compensate Johnson for his services.[1]

Johnson also claims that interspersed through the period when he was working on the subdivision development and later when he was engaged in conflict with McPhee and JCAV over his claim for payment, he was subjected to verbal abuse by McPhee. He contends that during a period from early 2003 to August 2003, the verbal abuse was mostly sexual in nature and included repeated demands from McPhee to participate in sexual acts as well as a graphically descriptive threat that McPhee would have sex with Johnson's girlfriend. The alleged abuse during this period also included demeaning remarks in which McPhee belittled Johnson's performance as a real estate agent. Johnson's evidence indicates that the abuse resumed in 2005. The described abuse during this later period was less sexual in nature but generally demeaning, such as calling Johnson profane and derogatory names.

Johnson alleges that McPhee's verbal abuse caused Johnson severe emotional distress. Johnson produced evidence that he suffered from post-traumatic stress disorder, was at times rendered nearly immobile due to his emotional state, once fainted while discussing McPhee's

---

[1]    Johnson also claimed that he was promised the right to market some lots in Radiant Lakes Estates. He does not appear to pursue on appeal any claim regarding the right to sell these lots.

alleged abuse with a business acquaintance, and generally suffered "strange chaotic bodily experiences."

In December 2005, Johnson filed this action alleging that JCAV and McPhee breached a contract to compensate him for his services in the subdivision development, that JCAV was negligent in its supervision of McPhee concerning performance of the alleged contract and concerning McPhee's alleged abusive behavior, and that McPhee intentionally and negligently inflicted emotional distress on Johnson, for which JCAV should be held vicariously liable.

Both McPhee and JCAV moved for summary judgment on all of Johnson's claims. The district court granted these motions and Johnson appeals.

## II.

## ANALYSIS

On review of an order granting summary judgment, we apply the same legal standard as that used by the trial court. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994); *Washington Fed. Sav. & Loan Ass'n v. Lash*, 121 Idaho 128, 130, 823 P.2d 162, 164 (1992). Summary judgment may be entered only if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). *See also Avila v. Wahlquist*, 126 Idaho 745, 747, 890 P.2d 331, 333 (1995); *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 742, 890 P.2d 326, 328 (1995). When a summary judgment motion has been supported by depositions, affidavits or other evidence, the adverse party may not rest upon the mere allegations or denials of that party's pleadings, but by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e). *See also Gardner v. Evans*, 110 Idaho 925, 929, 719 P.2d 1185, 1189 (1986). In order to survive a motion for summary judgment the plaintiff need not prove that an issue will be decided in its favor at trial; rather, it must simply show that there is a triable issue. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 524, 808 P.2d 851, 861 (1991). A mere scintilla of evidence or only a slight doubt as to the facts is insufficient to withstand summary judgment; there must be sufficient evidence upon which a jury could reasonably return a verdict for the party opposing summary judgment. *Corbridge v. Clark Equip. Co.*, 112 Idaho 85, 87, 730 P.2d 1005, 1007 (1986); *Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969). "The requirement of

3

specificity is underscored in cases where the moving defendant has established, prima facie, a defense grounded on the statute of limitations." *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994) (quoting *Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 306, 698 P.2d 365, 368 (1985)).

When a court considers a motion for summary judgment in a case that would be tried to a jury, all facts are to be liberally construed, and all reasonable inferences must be drawn in favor of the party resisting the motion. *G & M Farms*, 119 Idaho at 517, 808 P.2d at 854; *Sanders v. Kuna Joint School Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). The rule is different however when, as here, a jury trial has not been requested. In that event, because the court would be the fact-finder at trial, on a summary judgment motion the court is entitled to draw the most probable inferences from the undisputed evidence properly before it, and may grant the summary judgment despite the possibility of conflicting inferences. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007); *Intermountain Forest Mgmt., Inc. v. Louisiana Pacific Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001); *Brown v. Perkins*, 129 Idaho 189, 191, 923 P.2d 434, 436 (1996). Inferences thus drawn by a trial court will not be disturbed on appeal if the record reasonably supports them. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360-61, 93 P.3d 685, 691-92 (2004); *Intermountain Forest Mgmt., Inc.*, 136 Idaho at 236, 31 P.3d at 924.

## A.    Breach of Contract

Johnson's assertions regarding the claimed oral contract are vague as to when and how it was formed and what terms it included. The only alleged agreement that is sufficiently described in Johnson's deposition testimony and affidavits to constitute a possible basis of a claim is an alleged agreement that Johnson would assist McPhee to identify and procure land suitable for development of McPhee's envisioned subdivision. According to Johnson, he and McPhee orally agreed that Johnson, who was then licensed as a real estate agent, would locate land suitable for the subdivision and would assist McPhee in acquisition of the land by aiding him in negotiating with the owners of the property. Johnson alleges that McPhee told Johnson to first attempt to obtain compensation from the property sellers, but also promised that if the sellers would not pay

4

a commission, McPhee would ensure that Johnson was compensated.[2]  According to Johnson, the commission was to be three percent of the purchase price, or approximately that amount, but McPhee refused to sign a written contract because he wanted to avoid paying a commission to any real estate broker with whom Johnson was affiliated.  Johnson contends that throughout these contractual arrangements, McPhee was acting as a principal in JCAV or otherwise as its agent.

The district court granted summary judgment dismissing Johnson's breach of contract claim on the ground that Idaho statutes specify that real estate agency contracts are unenforceable unless they are in writing.  Johnson counters that his contract with McPhee and JCAV was a "customer agreement" creating a nonagency relationship, and that such agreements are not subject to the requirement of a writing.

The interpretation of a statute is a question of law over which we exercise free review. *Zener v. Velde*, 135 Idaho 352, 355, 17 P.3d 296, 299 (Ct. App. 2000).  We will construe a statute as a whole, and the plain meaning of a statute will prevail unless clearly expressed legislative intent is contrary or unless the plain meaning leads to absurd results.  *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539-40, 797 P.2d 1385, 1387-88 (1990); *Zener*, 135 Idaho at 355, 17 P.3d at 299.  Statutes that are *in pari materia*, i.e., relating to the same subject, must be construed together to give effect to legislative intent.  *Paolini v. Albertson's Inc.*, 143 Idaho 547, 549, 149 P.3d 822, 824 (2006); *Union Pacific R.R. Co. v. Bd. of Tax Appeals*, 103 Idaho 808, 811, 654 P.2d 901, 904 (1982).  In construing a statute, this Court examines the language used, the reasonableness of the proposed interpretations, and the policy behind the statutes.  *Webb v. Webb*, 143 Idaho 521, 525, 148 P.3d 1267, 1271 (2006).  This Court

---

[2]    Johnson also appears to assert he is contractually entitled to compensation for arranging meetings with various people involved in the development project such as engineers and contractors, and other similar activities.  Johnson admitted in deposition that he was never asked to perform these additional tasks, however, and has not proffered evidence to show that McPhee or JCAV ever assented to any contract for these additional services.  Therefore he has not made a prima facie showing of the elements of a breach of contract action for these services and summary judgment dismissing this component of the claim was proper.  *See Potts Constr. Co. v. North Kootenai Water District*, 141 Idaho 678, 681, 116 P.3d 8, 11 (2005) (contract not formed unless there is a distinct understanding as to all the terms); *Corder v. Idaho Farmway, Inc.*, 133 Idaho 353, 359, 986 P.2d 1019, 1025 (Ct. App. 1999) (meeting of the minds required to form a binding contract).

5

will avoid an interpretation that would lead to an absurd result or render a statute a nullity. *State v. Schmitt*, 144 Idaho 768, 770, 171 P.3d 259, 261 (Ct. App. 2007); *State v. Harvey*, 142 Idaho 727, 730, 132 P.3d 1255, 1258 (Ct. App. 2006).

Idaho's statutory scheme governing real estate brokers and salespersons and their contractual relations with "clients" and "customers" is found in Title 54, Chapter 20 of the Idaho Code. In our analysis we apply the statutes as they existed in 2003 when Johnson's contract was allegedly made. Idaho Code § 54-2084 provided: "A buyer or seller is not represented by a brokerage in a regulated real estate transaction unless the buyer or seller and the brokerage agree, in a separate written document, to such representation. No type of agency representation may be . . . created orally or by implication." Such brokerage agreements were defined in I.C. § 54-2004(4) as written agreements "between a buyer, seller, or both, and a real estate brokerage for agency representation in a regulated real estate transaction."[3] A "regulated real estate transaction" was a real estate transaction for which a real estate license was required. I.C. § 54-2004(33). Licensure was required if one "engage[d] in the business or act[ed] in the capacity" of a real estate broker or salesperson. I.C. § 54-2002. What constituted "engaging in the business" generally meant doing any act described in the definitions of "real estate broker" or "real estate salesperson," set out in I.C. §§ 54-2004(29) and (30). These acts, when done for another and for compensation or a promise or expectation of compensation, included "directly or indirectly engag[ing] in, direct[ing], or tak[ing] any part in the procuring of prospects, or in the negotiating or closing of any transaction which does or is calculated to result in . . . sell[ing], list[ing], buy[ing], or negotiat[ing], or offer[ing] to sell, list, buy or negotiate the purchase, sale, option, or exchange of real estate. . . ." Further, a statutory list of duties owed by an "agent" to his or her "client" included "[s]eeking a property for purchase at a price and under terms and conditions acceptable to the buyer and assisting in the negotiation therefor." I.C. § 54-2087. Taken together, these statutes provided that any person who undertook, for expected compensation, to represent another by directly or indirectly taking part in procuring prospects or negotiating a transaction to purchase real property had no enforceable agreement unless the agreement was in writing. Thus, Johnson's claimed oral agreement to locate and procure suitable property and

---

[3]     The written agreement also was required to comply with I.C. § 54-2050.

help negotiate its purchase on behalf of JCAV and McPhee falls squarely within the type of contracts for which the statutes required a writing.

Johnson points out, however, that the Idaho statutes recognized another type of relationship--a "nonagency" relationship that could be formed between a real estate brokerage or salesperson and an individual who was buying or selling real property in which the individual was a "customer" rather than a "client"--and the statutes nowhere required that such customer agreements be in writing. We agree that the statutes recognized such nonagency agreements and did not mandate that they be written. *See* I.C. §§ 54-2083(6), (11); 54-2086. Unfortunately, the statutes lacked clarity in defining what type of services could fall within such a nonagency brokerage relationship or customer agreement. Nevertheless, it remains clear that the types of services that Johnson contends he contracted to provide for JCAV and McPhee are among those for which a written compensation agreement was required under the statutory scheme discussed above. Johnson's claim that he was a nonagent cannot overcome the fact that his alleged contract was for what amounted to agency representation, and any contract to provide agency representation had to be in writing to be enforceable. The legislature's clear intent that such contracts had to be in writing cannot be circumvented merely by calling the contract something else, such as a "customer agreement."

Johnson next asserts that even if the alleged contract was subject to the section 54-2084 requirement of a writing, the doctrine of part performance as set forth in I.C. § 9-504 allows an exception to that requirement here because McPhee gave Johnson a small partial payment for Johnson's services. We are not convinced. Section 9-504, by its express terms, provides for a part-performance exception only to the general statute of frauds provisions of section 9-503.[4] It has no application to the statutes regulating real estate brokers and agents found in Title 54, Chapter 20 of the Idaho Code. Further, we doubt that a common law doctrine exempting partially performed contracts from a statute of frauds may be applied to alter the operation of a comprehensive statutory regulatory scheme like that found in Title 54, Chapter 20.

---

[4]     Idaho Code § 9-504 states:

> *The preceding section* must not be construed to . . . abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof. (Emphasis added.)

Even if the part performance doctrine could exempt a real estate agent's representation agreement from the I.C. § 54-2084 writing requirement, however, the doctrine would not be applicable to the facts alleged here. In Idaho, "part performance per se does not remove a contract from the operation of the statute of frauds. Rather, the doctrine of part performance is best understood as a specific form of the more general principle of equitable estoppel." *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 367, 109 P.3d 1104, 1109 (2005). *See also Sword v. Sweet*, 140 Idaho 242, 249, 92 P.3d 492, 499 (2004); *Frantz v. Parke*, 111 Idaho 1005, 1009-11, 729 P.2d 1068, 1072-74 (Ct. App. 1986). Since equitable estoppel requires detrimental reliance by the person attempting to enforce the contract, it would therefore be *Johnson's* partial performance, not McPhee's, that could implicate this exception to the statute of frauds. *See Wing v. Munns*, 123 Idaho 493, 500-01, 849 P.2d 954, 961-62 (Ct. App. 1992); *Mikesell v. Newworld Dev. Corp.*, 122 Idaho 868, 874, 840 P.2d 1090, 1096 (Ct. App. 1992); *Frantz*, 111 Idaho at 1010, 729 P.2d at 1073. Therefore to the extent Johnson asserts that McPhee's part payment constituted part performance of the alleged contract and thereby extricates the contract from the statute of frauds, that argument fails.

We note that any argument that Johnson's own actions constitute part performance would also fail here, because part performance takes a contract out of the statute of frauds only if the claimant's performance is attributable solely to the existence of the alleged oral agreement. *Simons v. Simons*, 134 Idaho 824, 827, 11 P.3d 20, 23 (2000); *Wolske Bros., Inc. v. Hudspeth Sawmill Co.*, 116 Idaho 714, 715-16, 779 P.2d 28, 29-30 (Ct. App. 1989). Here, Johnson acknowledges that when he undertook the work to locate and negotiate the purchase of property for a subdivision, he did so with the intent to seek compensation from the sellers, and he admits that he tried to get the sellers to pay him before he turned to McPhee for payment. Therefore, his alleged performance is not attributable solely to the claimed oral agreement for payment from McPhee--it could as readily be attributed to an expectation of compensation from the sellers.

Because the type of agreement that Johnson alleges had to be in writing to be enforceable, because Johnson acknowledges that there is no such writing, and because the

8

doctrine of part performance does not apply here, the district court was correct in granting summary judgment for the defendants on the breach of contract claim.[5]

## B.     Intentional Infliction of Emotional Distress

Johnson's claims for intentional and negligent infliction of emotional distress are based upon alleged acts of McPhee occurring between approximately August 2003 and August 2005. Johnson alleged that McPhee was at all times acting as an agent of JCAV and that JCAV is therefore liable for his misconduct on a *respondeat superior* theory.  The alleged conduct included sexual harassment, a graphic threat to seduce Johnson's girlfriend, and demeaning comments about Johnson.  On the defendant's summary judgment motion, the district court dismissed those claims arising from the conduct that occurred more than two years before Johnson filed his complaint on December 7, 2005, on the ground that the claims were time-barred by I.C. § 5-219.  As to claims for conduct alleged to have occurred on or after December 7, 2003, the district court dismissed on the ground that the alleged conduct was not sufficiently extreme and outrageous to give rise to a right of recovery.  Johnson posits error in both rulings.

### 1.     Statute of limitation

Idaho Code section 5-219(4) prescribes a two-year statute of limitation for actions for injury to a person.  Johnson argues that his emotional distress claims predicated on conduct that occurred more than two years before commencement of this action are salvaged from this time bar by the "continuing tort" doctrine as it was applied by our Supreme Court in *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993).  In *Curtis*, a woman alleged claims of battery and intentional infliction of emotional distress against her former co-habitant boyfriend, asserting that over a period of years he had subjected her to emotional and physical abuse.  The defendant contended that much of her claim was barred by section 5-219(4).  The Supreme Court noted that for some types of tortious conduct, including infliction of emotional distress, compensable injury may not be suffered immediately, but may result from the cumulative impact of tortious behavior

---

[5]     Our decision dictates that to the extent Johnson asserted a tort claim against JCAV for not investigating McPhee's alleged breach of the contract, that claim was also properly dismissed on summary judgment.

9

over a long period.  Quoting with approval from *Page v. United States,* 729 F.2d 818, 821-22 (D.C. Cir. 1984), the Court stated:

> It is well-settled that "[w]hen a tort involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the tortious conduct ceases."  Since usually no single incident in a continuous chain of tortious activity can "fairly or realistically be identified as the cause of significant harm," it seems proper to regard the cumulative effect of the conduct as actionable.  Moreover, since "one should not be allowed to acquire a right to continue the tortious conduct," it follows logically that statutes of limitation should not run prior to its cessation.

*Curtis*, 123 Idaho at 603, 850 P.2d at 754.  The Court then held that because the abuse suffered by the plaintiff was a continuing one, the limitation period did not begin to run until the tortious behavior had ended.  A continuing tort was defined as "one inflicted over a period of time; it involves a wrongful conduct that is repeated until desisted, and each day creates a separate cause of action." *Id.  See also Glaze v. Deffenbaugh*, 144 Idaho 829, 833, 172 P.3d 1104, 1108 (2007).  Only when such tortious conduct ends does the limitations period begin to run.  *Id.*

The *Curtis* court cautioned, however, that the continuing tort doctrine "does not throw open the doors to permit filing these actions at any time."  Rather,

> [t]he courts which have adopted this continuing tort theory have generally stated that the statute of limitations is only held in abeyance until the tortious acts cease. At that point the statute begins to run.  If at some point after the statute has run the tortious acts begin again, a new cause of action may arise, but only as to those damages which have accrued since the new tortious conduct began.

*Curtis*, 123 Idaho at 604, 850 P.2d at 755 (citations omitted).  The district court here held that because Johnson's allegations indicated that McPhee's misconduct ceased in mid-2003 and did not resume until 2005, the initial period of misconduct should be deemed to have ceased, and Johnson's cause of action accrued, in 2003.  We agree with the district court's analysis.  Because there was a distinct and substantial interruption of the alleged tortious activity for more than a year, the alleged misbehavior in 2005 cannot be said to have been part of an unceasing stream of tortious acts that began in 2003.  Therefore, the continuing tort doctrine does not apply to save from the statute of limitation Johnson's claims that are predicated upon pre-December 7, 2003 conduct.

Johnson next argues that the defendants should be estopped from relying upon the statute of limitation due to their statements or conduct that allegedly caused him to refrain from filing an action during the limitation period.  Equitable estoppel may be applied to prevent assertion of a

statute of limitation defense if the defendant's statements or conduct caused the plaintiff to refrain from prosecuting an action during the limitation period. *See Theriault*, 108 Idaho at 307, 698 P.2d at 369; *Zumwalt v. Stephan, Balleisen & Slavin*, 113 Idaho 822, 825, 748 P.2d 406, 409 (Ct. App. 1987). Such estoppel is not shown here, however, because the conduct of the defendants upon which Johnson relies pertains only to Johnson's breach of contract claim, not the tort claims. That is, he asserts that the defendants' continuing promises to pay Johnson for his services as a real estate agent deterred him from initiating the lawsuit earlier. While these alleged promises might reasonably have dissuaded Johnson from filing an action for breach of contract, they include nothing that would have reasonably caused him to believe that he need not file a timely action on his emotional distress claims.

Accordingly, we hold that Johnson's claims for intentional infliction of emotional distress that are rooted in occurrences happening before December 7, 2003 are time-barred. Claims based on later conduct, however, may be considered.

### 2. Outrageousness of the alleged conduct

As to that portion of Johnson's intentional infliction of emotional distress claim that was predicated on McPhee's post-December 6, 2003 behavior, the district court held that the alleged conduct was not sufficiently extreme and outrageous to support a cause of action for intentional infliction of emotional distress. Johnson takes exception to that ruling.

To recover for intentional infliction of emotional distress, a plaintiff must show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress, and (4) the emotional distress was severe. *Spence v. Howell*, 126 Idaho 763, 774, 890 P.2d 714, 725 (1995); *Payne v. Wallace*, 136 Idaho 303, 306, 32 P.3d 695, 698 (Ct. App. 2001); *Davis v. Gage*, 106 Idaho 735, 741, 682 P.2d 1282, 1288 (Ct. App. 1984). Liability for this intentional tort is generated only by conduct that is very extreme. *Edmondson v. Shearer Lumber Products*, 139 Idaho 172, 180, 75 P.3d 733, 741 (2003). The conduct must be not merely unjustifiable; it must rise to the level of "atrocious" and "beyond all possible bounds of decency," such that it would cause an average member of the community to believe that it was outrageous. *Id.* Examples of conduct that has been deemed sufficiently extreme and outrageous by Idaho courts include: an insurance company speciously denying a grieving widower's cancer insurance claim while simultaneously impugning his character and drawing him into a prolonged

dispute, *Walston v. Monumental Life Ins. Co.*, 129 Idaho 211, 219-20, 923 P.2d 456, 464-65 (1996), prolonged sexual, mental, and physical abuse inflicted upon a woman by her co-habiting boyfriend, *Curtis*, 123 Idaho at 605-07, 850 P.2d at 756-57, recklessly shooting and killing someone else's donkey that was both a pet and a pack animal, *Gill v. Brown*, 107 Idaho 1137, 1138-39, 695 P.2d 1276, 1277-78 (Ct. App. 1985), and real estate developers swindling a family out of property that was the subject of their lifelong dream to build a Christian retreat, *Spence*, 126 Idaho at 773-74, 890 P.2d at 724-25.

Though not entirely clear, Johnson's post-December 6, 2003 allegations appear to consist of verbal abuse inflicted in person and via voicemail and text messages.[6] Many of the conversations appear to have been part of an ongoing dispute between Johnson and McPhee regarding Johnson's demands for payment of a commission for his services as a real estate agent. One instance of alleged abuse was in late August 2005 when Johnson told McPhee how worthless McPhee made Johnson feel, and McPhee allegedly responded by saying that Johnson "hadn't even begun to see how much [McPhee] hated [Johnson]." Other instances allegedly included angry messages on Johnson's answering machine in which McPhee called Johnson such things as a "f---ing p---k," and conversations where McPhee called Johnson various derogatory names such as a "deranged motherf----r," "crazy," a "fly on my a--," and a "piece of s--t." Johnson submitted an affidavit from a friend and business acquaintance who was with Johnson on one occasion when he listened to a voice message left by McPhee. The friend stated that Johnson was so disturbed by the first message that he asked the friend to listen to the second message and relay its content to Johnson. The friend described both messages as "very abusive."[7] Johnson also alleges that on October 5, 2005, he initiated a cellular phone text

---

[6] One of the statements Johnson complains of from the string of abusive conversations is McPhee telling Johnson, "We don't have to pay you." This statement is of no consequence, however, since we have concluded that Johnson has not established a legal duty for either McPhee or JCAV to pay him in relation to Radiant Lake Estates.

[7] Johnson saved and placed in evidence one of these recorded messages that he contends was left by McPhee. The voice on the recording says: "Hey you f---ing d---head, why don't you call me back? I need to borrow some money, you know, I never--you never even loaned me a nickel. You f---ing p---k. Give me a call." Johnson said the other message was almost exactly the same. It is unclear why McPhee appears to have been asking Johnson for money when Johnson was at the same time asking McPhee for money from the Radiant Lake Estates project.

12

message conversation with McPhee in which Johnson pressed McPhee to acknowledge Johnson's role in the creation of Radiant Lake Estates and then called McPhee a derogatory name, to which McPhee responded in a similar manner. Johnson said that it was not the words used against him that hurt so much as the general way McPhee was treating him in relation to Johnson's emotional attachment to McPhee. Also, Johnson complains of a confrontation that apparently took place between Johnson and McPhee in July 2006 where Johnson displayed an obscene hand gesture in McPhee's direction and soon thereafter McPhee approached Johnson and the two had a heated exchange and some physical contact, after which Johnson walked away.

We agree with the district court that Johnson's allegations concerning McPhee's insults do not sustain an action for intentional infliction for emotional distress. While McPhee's alleged conduct after December 6, 2003, if true, was mean-spirited and crude, it does not rise to the level of extreme and outrageous conduct required to kindle this cause of action. The district court therefore did not err in granting summary judgment for McPhee and JCAV on this claim.

C. **Negligent Infliction of Emotional Distress**

1. **Statute of limitation**

Like part of the intentional infliction of emotional distress claim, that portion of Johnson's claim for negligent infliction of emotional distress rooted in events occurring before December 7, 2003, is time-barred and is not salvaged by the continuing tort theory or equitable estoppel.

2. **Outrageousness of the alleged conduct**

As to that portion of the negligence claim not barred by the statute of limitation, the district court granted summary judgment on the same basis as on the intentional infliction claim-- that McPhee's alleged misconduct was not sufficiently extreme and outrageous. This was error because extreme and outrageous conduct is not a required element of an action for *negligent* infliction of emotional distress.

Negligent infliction of emotional distress is simply a category of the tort of negligence, requiring the elements of a common law negligence action. *See Nation v. State, Dep't of Correction*, 144 Idaho 177, 189-91, 158 P.3d 953, 965-66 (2007); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 175-77, 804 P.2d 900, 904-06 (1991); *Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 837, 801 P.2d 37, 44 (1990). These elements

13

are: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the conduct and the plaintiff's injury; and (4) actual loss or damage. *Brooks v. Logan*, 127 Idaho 484, 489, 903 P.2d 73, 78 (1995); *Black Canyon Racquetball Club, Inc.*, 119 Idaho at 175-76, 804 P.2d at 904-05; *Nation*, 144 Idaho at 189, 158 P.3d at 965. In addition to these elements, for a claim of negligent infliction of emotional distress to lie, there must be some physical manifestation of the plaintiff's emotional injury. *Black Canyon Racquetball Club, Inc.*, 119 Idaho at 177, 804 P.2d at 906; *Czaplicki v. Gooding Joint School Dist. No. 231*, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989); *but see Brown*, 118 Idaho at 837, 801 P.2d at 44 (adopting an exception to physical manifestation requirement in some cases involving mishandling of dead bodies).

These authorities do not indicate that outrageousness of the defendant's actions is a required element of a negligent infliction claim. That it is not an element is recognized in *Brown*, where the Court separately considered the torts of intentional and negligent infliction of emotional distress. With respect to the former, the Court affirmed the dismissal of the claim because the plaintiffs offered no evidence that the defendant's conduct was sufficiently extreme, outrageous, wanton or malicious to support the cause of action. If that element were also an element of the negligence cause of action, the Supreme Court would necessarily have affirmed the dismissal of the negligence claim on the same basis, but it did not. Rather, the Court held that the plaintiff's evidence was sufficient to raise genuine factual issues precluding summary judgment on the claim of negligent infliction of emotional distress. *Id.* at 837-38, 801 P.2d at 44-45. Likewise, in *Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 606 P.2d 944 (1980), the Supreme Court held that the trial evidence did not support a recovery for intentional infliction of emotional distress because the defendant's conduct was not outrageous, and then addressed the tort of negligent infliction of emotional distress without any suggestion that the absence of outrageous conduct would also defeat that claim. Accordingly, the district court here erred in dismissing Johnson's cause of action for negligent infliction of emotional distress on the basis that the alleged misconduct was insufficiently extreme or outrageous.

3.  **Sufficiency of evidence on elements of the cause of action**

Having determined that the district court's stated ground for granting summary judgment on Johnson's post-December 6, 2003, claims was erroneous, we must consider whether the dismissal of this cause of action can be affirmed on any alternative ground that was urged by the

14

defendants in their summary judgment motions. We may affirm the district court if we conclude that summary judgment on this cause of action would have been proper on an alternative basis that was presented below. *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 218, 177 P.3d 955, 965 (2008).

The defendants assert that the facts alleged by Johnson are insufficient even to raise a genuine factual issue as to some of the elements of a cause of action for negligent infliction of emotional distress. They contend that Johnson's evidence shows neither the breach of a duty of care owed by McPhee nor a causally related injury to Johnson.[8] The defendants assert that they had no knowledge that the alleged insulting language was harmful to Johnson, saying Johnson never objected to McPhee's actions. They also assert that Johnson's emotional distress was not caused by McPhee's acts but was instead caused by other factors in Johnson's life, such as economic hardship and perceived ostracization from the local community due to his odd or improper behavior. Johnson acknowledges that he suffered from unrelated emotional instability and other stressors in his life, but contends that his level of emotional pain was severely exacerbated by McPhee's behavior.

If the party resisting a summary judgment motion cannot make a showing on an element essential to his claim, "there can be no genuine issue of material fact since a complete failure of proof concerning an essential element on the nonmoving party's case necessarily renders all other facts immaterial." *McGilvray v. Farmers New World Life Ins. Co.*, 136 Idaho 39, 42, 28 P.3d 380, 383 (2001). Therefore, summary judgment may be entered against a party who fails to present evidence sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Moreland v. Adams*, 143 Idaho

---

[8] JCAV also sought summary judgment on the ground that it could not be vicariously liable for McPhee's negligent infliction of emotional distress on Johnson because McPhee was not an agent of JCAV. In support, JCAV filed an affidavit dated April 12, 2006, of Jack C. VanderWaal which stated that VanderWaal was the "sole member" of JCAV and that Mike McPhee "is not now, and never has been, a member of JCAV, LLC." However, Johnson rebutted this assertion by placing in evidence an addendum to an agreement for the purchase of a portion of the land used in the Radiant Estates development. The addendum was signed by both VanderWaal and McPhee and identifies both of those signators as a "managing member" of JCAV. There plainly exists a genuine issue of fact as to whether McPhee was a principal in or agent for JCAV. Therefore, JCAV is not entitled to summary judgment on the ground that McPhee was not its agent.

687, 689, 152 P.3d 558, 560 (2007); *McGilvray*, 136 Idaho at 42, 28 P.3d at 383; *Jones v. Micron Technology, Inc.*, 129 Idaho 241, 246, 923 P.2d 486, 491 (Ct. App. 1996).

We conclude that the disposition of the defendant's argument for summary judgment on the negligent infliction of emotional distress claim turns largely upon whether Johnson's evidence is sufficient to support a finding that a risk of serious harm to Johnson from McPhee's conduct was foreseeable to McPhee when the conduct occurred, for foreseeability is a component of both the duty element and the causation element of a negligence claim. The duty element recognizes that every person "has a 'duty to exercise ordinary care to prevent unreasonable, *foreseeable* risks of harm to others.'" *Nation*, 144 Idaho at 190-91, 158 P.3d at 966-67 (quoting *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999)) (emphasis added). *See also Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 399, 987 P.2d 300, 311 (1999); *Le'Gall v. Lewis County*, 129 Idaho 182, 185, 923 P.2d 427, 430 (1996); *Sharp v. W.H. Moore, Inc.*, 118 Idaho 297, 300, 796 P.2d 506, 509 (1990); *Boots ex rel. Boots v. Winters*, 145 Idaho 389, 393, 179 P.3d 352, 356 (Ct. App. 2008).

Foreseeability is also a factor in the causation element of a negligence cause of action. An injured party may recover only for harm that was proximately caused by a breach of the duty of care. *Hayes v. Union Pac. R.R. Co.*, 143 Idaho 204, 208, 141 P.3d 1073, 1077 (2006). Proximate cause consists of two components, actual cause and legal cause, also referred to as cause in fact and scope of legal responsibility. *Cramer v. Slater*, ___ Idaho ___, ___ P.3d ___ (March 5, 2009); *Hayes*, 143 Idaho at 208, 141 P.3d at 1077; *Doe v. Sisters of the Holy Cross*, 126 Idaho 1036, 1039-41, 895 P.2d 1229, 1232-34 (Ct. App. 1995). The "legal responsibility" component focuses upon "whether it was reasonably foreseeable that such harm would flow from the negligent conduct." *Cramer*, ___ Idaho at ___, ___ P.3d at ___; *Hayes*, 143 Idaho at 208, 141 P.3d at 1077; *Sisters of the Holy Cross*, 126 Idaho at 1040, 895 P.2d at 1233. Proximate causation cannot be established if "the injury and manner of occurrence are 'so highly unusual that . . . a reasonable [person], making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected the injury to occur.'" *Cramer*, ___ Idaho at ___, ___ P.3d at ___ (quoting *Sisters of the Holy Cross*, 126 Idaho at 1041, 895 P.2d at 1234). *See also Alegria v. Payonk*, 101 Idaho 617, 619-20, 619 P.2d 135, 137-38 (1980).

This Court would readily hold that in ordinary circumstances of social interaction, it would not be foreseeable that insulting and demeaning remarks like those attributed to McPhee

16

could inflict serious emotional harm. As observed by our Supreme Court in *Brown v. Fritz*, 108 Idaho 357, 699 P.3d 1371 (1985):

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Id.* at 362, 699 P.2d at 1376 (quoting RESTATEMENT (SECOND) OF TORTS, § 46 (1965)). Johnson's claim is not so readily disallowed, however, because he has presented evidence of unusual emotional fragility and susceptibility to harm from McPhee's insults due to Johnson's emotional instability or mental illness, and he asserts that McPhee was aware of this exceptional emotional vulnerability when he engaged in the abusive behavior.

Liability can arise from otherwise unactionable conduct if the conduct caused serious emotional harm to a peculiarly fragile individual and the defendant knew or should have known of the individual's susceptibility. As stated in the RESTATEMENT (SECOND) OF TORTS, § 313 (1965), comment c, "[O]ne who unintentionally but negligently subjects another to such an emotional distress does not take the risk of any exceptional physical sensitiveness to emotion which the other may have *unless the circumstances known to the actor should apprise him of it*." (emphasis added). A treatise refers to this concept as a "pervading principle of tort law," saying:

> Generally defendant's standard of conduct is measured by the reactions to be expected of normal persons. . . . Activity may be geared to a workaday world rather than to the hypersensitive. It may be otherwise, however, if defendant has knowledge or notice of the presence of idiosyncrasy in any given case. This, of course, is the application of a pervading principle of tort law.

FOWLER V. HARPER ET AL., 3 THE LAW OF TORTS § 18.4, at 691-92 (2d ed. 1986). Applying this principle, the Washington Supreme Court in *Hunsley v. Giard*, 553 P.2d 1096, 1103 (Wash. 1976), said: "Inherent in the formula [for determining the standard of liability] is the principle that the plaintiff's mental distress must be the reaction of a normally constituted person, *absent defendant's knowledge of some peculiar characteristic or condition of plaintiff*" (emphasis added). *See also Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 898 (Cal. Ct. App. 2003) (". . . the lawyer's obligation to the client, *at least absent knowledge of any unusual susceptibility*, is economic; the lawyer does not assume an obligation to protect the client's emotional state") (emphasis added), and *Daley v. LaCroix*, 179 N.W.2d 390, 395 (Mich. 1970) ("*Absent specific knowledge of plaintiff's unusual sensitivity*, there should be no recovery for

17

hypersensitive mental disturbance where a normal individual would not be affected under the circumstances.") (emphasis added).

Thus, the existence or non-existence of a duty of care and proximate causation in this case turns upon whether McPhee was aware of Johnson's abnormal vulnerability and the consequent risk of serious emotional injury from McPhee's insults. Johnson's evidence indicates that he told McPhee multiple times from April 2004 through approximately July 2005 about Johnson's "attempts to heal," and of his "strange chaotic bodily experiences." Johnson also says he told McPhee in late August 2005 that he "couldn't stand the way [McPhee] treated me like I was worthless," to which McPhee allegedly replied that Johnson "hadn't even begun to see how much he hated [Johnson]." Johnson also asserts that he informed McPhee in 2005 of how negatively impacted he was by McPhee's crude sexual advances, to which McPhee responded by denying knowledge of any such advances. Other evidence in the record indicates that Johnson presented odd behavior and odd comments throughout the time frame in question, the observation of which could have made McPhee aware that Johnson was not mentally stable. While the question is a close one, we conclude that, drawing all permissible inferences in favor of Johnson, this evidence is sufficient to permit an inference that McPhee was aware of Johnson's unique emotional delicacy such that he foresaw or reasonably should have foreseen that serious emotional harm would result from his alleged verbal abuse of Johnson. Therefore, summary judgment for the defendants cannot be sustained on the basis that, even with all reasonable inferences drawn in Johnson's favor, there is insufficient evidence of foreseeability to show that McPhee owed Johnson a duty of care or to show that a breach of that duty proximately caused harm to Johnson.

Johnson's evidence is also sufficient to raise genuine factual issues as to whether the emotional distress allegedly inflicted by McPhee was physically manifested, for both Johnson and an independent witness attested that after a conversation in which Johnson was urged to confront McPhee about McPhee's mistreatment of him, Johnson became so distressed that he passed out, fell to the floor, and lost control of bodily functions.

It thus appears that, if all reasonable inferences are drawn in his favor, Johnson provided sufficient evidence from which a trier of fact *could* find that his burden of proof is satisfied on all of the elements of his negligent infliction of emotional distress claim. However, because a jury trial was not requested by any party in this case, in ruling on the defendants' summary judgment

18

motions the district court here was not obligated to draw all inferences in Johnson's favor. As noted above, when the court will be the fact-finder at trial, it is permissible for the court on a summary judgment motion to draw the inferences that it deems most probable from the undisputed evidence and grant summary judgment despite the possibility of conflicting inferences. *Watkins v. Peacock*, 145 Idaho 704, 708, 184 P.3d 210, 214 (2008) (quoting *Davis v. Peacock*, 133 Idaho 637, 640, 991 P.2d 362, 365 (1999)); *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 615, 167 P.3d 748, 752 (2006); *Intermountain Forest Mgmt., Inc.*, 136 Idaho at 235, 31 P.3d at 923; *Snyder v. Miniver*, 134 Idaho 585, 587, 6 P.3d 835, 837 (Ct. App. 2000). Because the district court here dismissed Johnson's claim for negligent infliction of emotional distress on other grounds, it did not address these possible inferences. The task of drawing inferences on a summary judgment motion is committed to the trial court and may not be performed by this Court for the first time on appeal. Therefore, remand is necessary for the district court to further consider the defendants' request for summary judgment on the ground that Johnson's evidence is insufficient to prove the duty of care and causation elements of his cause of action for negligent infliction of emotional distress. In doing so, the court may draw the inferences it deems most reasonable concerning whether McPhee had knowledge or sufficient notice that Johnson's mental or emotional fragility made him vulnerable to serious emotional distress from McPhee's alleged misconduct. Depending upon the inferences drawn by the district court, that court may either grant summary judgment to the defendants or may require a trial on Johnson's claim for negligent infliction of emotional distress.

### D. Judicial Bias

Johnson makes a general argument that the district court was biased against him. However, because Johnson did not move to disqualify the district judge, he may not raise this issue on appeal. *See McPheters v. Maile*, 138 Idaho 391, 396-97, 64 P.3d 317, 322-23 (2003); *Quintana v. Quintana*, 119 Idaho 1, 6, 802 P.2d 488, 493 (Ct. App. 1990).

### E. Attorney Fees

McPhee requests an award of attorney fees on appeal. As to Johnson's tort claims, McPhee seeks an award of fees under I.C. § 12-121. Fees may be granted under that statute when the court is left with "the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation." *Ashby v. W. Council, Lumber Prod. & Indus. Workers*, 117 Idaho 684, 688, 791 P.2d 434, 438 (1990); *Minich v. Gem State Developers, Inc.*,

19

99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Here, although McPhee prevailed on the intentional infliction of emotional distress claim, he did not prevail on the negligent infliction claim, and it cannot be said that the appeal on the tort issues was entirely frivolous, unreasonable or without foundation. We therefore do not award attorney fees under I.C. § 12-121.

McPhee also claims entitlement to an award of attorney fees incurred on appeal in connection with the breach of contract claim pursuant to I.C. § 12-120(3). That statute mandates an award of fees to the prevailing party in civil actions that are based on, among other things, a contract for services or a commercial transaction. *See Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 274-75, 869 P.2d 1365, 1369-70 (1994); *Karterman v. Jameson*, 132 Idaho 910, 916, 980 P.2d 574, 580 (Ct. App. 1999). When a party has alleged the existence of a contract of the type encompassed in this statute, the prevailing party is entitled to recover fees even though no liability under the alleged contract was established. *Farmers Nat'l Bank v. Shirey*, 126 Idaho 63, 73, 878 P.2d 762, 772 (1994). Johnson's breach of contract claim here was predicated on an alleged contract for services, which also constituted a commercial transaction. Therefore, McPhee is entitled to recover his attorney fees incurred on appeal with respect to the contract claim only.

### III.

### CONCLUSION

The district court's order granting summary judgment is affirmed on all causes of action except that for negligent infliction of emotional distress. As to that claim, the summary judgment order is vacated and the matter remanded to the district court for further proceedings in accordance with this opinion. McPhee is awarded attorney fees incurred only for his response to the appeal on Johnson's breach of contract claim. JCAV, not having requested attorney fees, is awarded none. No costs are awarded on appeal because no party prevailed overall.

Judge GUTIERREZ and Judge GRATTON **CONCUR.**

20