**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49818**

| | | |
|---|---|---|
| **ANDREA SCHRIVER and KYLE SCHRIVER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs-Appellants-Cross Respondents,** | ) | **Boise, May 2024 Term** |
| | ) | |
| | ) | |
| v. | ) | **Opinion Filed: October 4, 2024** |
| | ) | |
| **ZACHARY JOSEPH RAPTOSH and LAKESHORE ANIMAL HOSPITAL, LLC,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| | ) | |
| **Defendants-Respondents-Cross Appellants.** | ) | |
| _____ | ) | |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County, Matthew J. Roker, District Judge.

The decision of the district court is <u>affirmed in part</u> and <u>reversed in part</u>.

Animal Law Offices, PLLC, Bellingham, Washington, for Appellants. Adam P. Karp argued.

Anderson Julian & Hull, LLP, Boise, for Respondents. Robert A. Mills argued.

_____

BRODY, Justice.

This appeal addresses the damages a pet owner may recover for the death of a pet as a result of alleged veterinary malpractice and an unauthorized necropsy. The Schrivers contend they are entitled to recover non-economic damages for loss of companionship and emotional distress after their cat died and was subjected to an unauthorized necropsy while in the care of Dr. Raptosh and Lakeshore Animal Hospital (collectively, "Dr. Raptosh and Lakeshore"). They appeal the district court's denial of emotional distress damages as part of their trespass to chattels/conversion claim, and the district court's grant of summary judgment in favor of the veterinarian on their claims for negligent infliction of emotional distress, intentional or reckless infliction of emotional distress, and lack of informed consent. Dr. Raptosh and Lakeshore cross-appeal the district court's

1

decision to apply the "value to owner" measure of economic damages for the loss of the Schrivers' personal property.

We affirm the district court's decision in part, reverse in part, and remand for further proceedings.

## I. BRIEF SUMMARY

This case addresses the types of damages available to bereaved pet owners for the death of a family pet and the treatment of its body post-mortem. The Schrivers seek to recover damages for the emotional distress they endured after their cat died following a veterinary procedure and the body was subjected to a necropsy, allegedly performed against their will. They assert that pet ownership creates a strong emotional bond between human and pet, which makes their grief foreseeable, and therefore, compensable. They also assert that a pet's value to its owner is relational in nature, which they argue gives rise to the recovery of non-economic damages for the loss of companionship when that pet dies as a result of alleged malpractice. In essence, the Schrivers ask this Court to recognize a wrongful death action for the loss of their cat. We decline to do so.

While the loss of a beloved pet undoubtedly brings much sadness, our decision today reflects the bedrock legal principle that pets, like livestock, are personal property. Our decision upholds the long-standing rule of law that when a pet has no fair market value at the time of its death, the proper measure of damages is the pet's actual, economic value to the owner, including the monetary value assigned to the pet's pedigree, habits, traits, and reputation. The pet's valuation does not, however, include the sentimental value attached to the pet's companionship.

We also affirm the Idaho Court of Appeals' longstanding conclusion that emotional distress damages are not available for the destruction of an animal as part of a claim for trespass to chattels or conversion. Instead, a claim for emotional distress damages for loss of personal property must be pursued as part of a negligent infliction of emotional distress or intentional or reckless infliction of emotional distress claim. In this case, a claim for negligent infliction of emotional distress is not available to the Schrivers because that type of claim must start with a duty of care to avoid emotional harm to others. We, along with a majority of jurisdictions across the nation, decline to recognize such a duty on the part of a veterinarian. However, an action for intentional or reckless infliction of emotional distress rests not on the establishment of a duty of care but on the extreme and outrageous nature of the conduct at issue. Whether the necropsy at issue in this case rises to

the level of extreme and outrageous conduct sufficient to award recovery for emotional distress is a question of fact best left to the jury. Accordingly, and for the reasons expressed more fully below, we affirm the district court's decision in part, reverse in part, and remand for further proceedings.

## II. BACKGROUND

### A.     Factual Background

In 2014, Kyle and Andrea Schriver paid $100 to adopt Gypsy, a spayed female, black domestic feline, when she was eleven weeks old. Approximately four years later, in November 2018, Andrea took Gypsy to Lakeshore Animal Hospital, LLC ("Lakeshore") for treatment of what she suspected was a respiratory infection. This was the first time Gypsy had been seen at Lakeshore, so Andrea completed a "New Patient Form" that provided the reason for the visit, the cat's symptoms, and authorization "to examine, prescribe for, or treat the above described pet."

Dr. Katelin Young, a veterinarian, first examined Gypsy and determined that the cat did not have an upper respiratory infection. Instead, she suspected a urinary tract infection ("UTI") and recommended a blood draw and urine collection. In response, Andrea stated that she "had really hoped Gypsy would not be poked that day," believing that Gypsy would be "poked" only for the blood draw and that the urine would be obtained via free catch or manual expression of the bladder.

Dr. Young then took Gypsy into another area of the veterinary clinic while Andrea waited in the lobby. Blood was successfully drawn from Gypsy; prior to the blood draw, Gypsy was "[m]ildly fractious," "[n]ot wanting to hold still, talkative," "meowing, screeching, caterwauling" and otherwise unhappy. Gypsy was then placed in a trough and restrained by veterinary technicians while Dr. Young took preliminary steps to perform cystocentesis, a diagnostic procedure for a urinary tract infection in which a needle is inserted through the abdominal wall and into the bladder to extract urine. Dr. Young used an ultrasound to examine Gypsy's bladder. However, after seeing that Gypsy's bladder was small and only approximately thirty-percent full, she did not feel comfortable performing the cystocentesis herself. Dr. Young then asked Dr. Raptosh to help her with the cystocentesis, and he agreed. Dr. Raptosh used the ultrasound to locate Gypsy's bladder, but as he inserted the needle, Gypsy "squirmed or rolled[,]" and "a small amount of blood was aspirated."

At that point, Dr. Raptosh stopped the procedure and attempted to place an IV catheter in a vein in Gypsy's leg, but he was unable to do so. Gypsy appeared to be in vasovagal, cystocentesis

3

shock; she defecated, began open mouth breathing, and her heart rate dropped. Dr. Raptosh gave her a shot of epinephrine "to help with [the] shock," then "put her in the cat room in the kennel where it was dark and quiet just to relax for a few minutes."

Meanwhile, Dr. Young informed Andrea that Gypsy did not handle the examination well and advised that Gypsy should stay under observation at Lakeshore for three hours to "calm down." At this time, Andrea completed a "Small Animal Drop-Off/Emergency Form," noting the reason for the visit was a possible UTI. The form provided a box for a pet owner to check "yes" or "no" to the authorization for sedation, x-rays, and IV catheter. It also provided a box for the pet owner to authorize or reject bloodwork, including a comprehensive panel and a complete blood count, providing the price for each. Andrea explicitly authorized sedation, IV catheter, a comprehensive panel, and a complete blood count. Notably, the form did not specify any other procedure. Andrea then left Lakeshore to wait out the three hours in her home. Approximately two hours after the attempted cystocentesis, Dr. Raptosh checked on Gypsy and noticed that she had labored breathing; Gypsy's heart then stopped. Dr. Raptosh attempted CPR, but Gypsy passed away.

Dr. Raptosh then called Andrea to inform her of her cat's death, and asked whether she would like him to look into Gypsy's abdomen to try to ascertain the cause of death. The parties dispute whether Andrea consented to a necropsy. Dr. Raptosh asserts that Andrea "consented to looking into the abdomen," whereas Andrea asserts that she screamed "No!" at Dr. Raptosh over the phone when asked permission to find out why her cat had died. She also asserts that she told Dr. Raptosh she could not manage further conversation at that time and to await a call from her husband. Dr. Raptosh did not wait; he opened the cat's abdomen post-mortem, ordering a picture be taken because he "thought that the abdominal wall was very atypical." Dr. Raptosh also "appreciated [a] blood clot" in Gypsy's abdomen.

Following Gypsy's death, Andrea became depressed and suffered from suicidal ideation. She also suffered from migraines, sleep disturbances, and tachycardia. She sought medical treatment for her emotional distress and was ultimately placed on medications.

**B.      Procedural History**

Approximately one year after Gypsy's death, the Schrivers filed suit against Dr. Raptosh and Lakeshore in district court. The Schrivers sought $35,000 in general and special damages, including: the economic value of Gypsy; the costs of her veterinary bills; Andrea's medical and counseling bills associated with treatment for the loss of Gypsy; loss of Gypsy's companionship;

4

mental anguish; emotional distress; and loss of enjoyment of life. The Schrivers asserted eight causes of action, including: (1) two counts of conversion and/or trespass to chattels, the first related to the death of Gypsy by performing unauthorized cystocentesis, and the second related to the unauthorized necropsy; (2) intentional and/or reckless infliction of emotional distress (as to Andrea); (3) property damage/destruction; (4) breach of bailment; (5) breach of contract; (6) professional negligence; (7) negligent infliction of emotional distress (as to Andrea); and (8) lack of informed consent.

In May 2021, Dr. Raptosh and Lakeshore filed a motion for summary judgment seeking dismissal of all claims. Dr. Raptosh and Lakeshore also requested the district court hold, as a matter of law, that the measure of damages for the loss of Gypsy be limited to a fair market of $200, if anything. The district court issued a written decision that granted and denied the motion in part, but reserved ruling on the claim for negligent infliction of emotional distress. The district court's decision granted the motion for summary judgment on the claims for intentional infliction of emotional distress and lack of informed consent but denied the motion with respect to the measure of damages for the loss of Gypsy and all other claims.

The district court first denied the motion to limit the damages for the loss of Gypsy to the fair market value of $200 or less. The district court recognized that animals are personal property, and the measure of damages for the destruction of personal property "is the fair market value of the property at the time of its destruction." However, citing to *Zenier v. Spokane International Railroad. Co.*, 78 Idaho 196, 300 P.2ed 494 (1956), and *Bratton v. Slininger*, 93 Idaho 248, 251, 460 P.2d 383, 386 (1969), it also recognized that, when personal property that was destroyed had no fair market value at the time of destruction, the value to the owner may be an acceptable measure of damages. The district court then determined "[t]here is no dispute that Gypsy had no fair market value at the time of [her] death[,]" and held that "Gypsy's value to [the Schrivers] is an appropriate measure of damages[.]"

Second, the district court denied Dr. Raptosh and Lakeshore's motion for summary judgment on the breach of contract, bailment, and trespass to chattels/conversion claims. The district court explained that multiple causes of action can be interrelated, and veterinarian liability for injury or death to an animal may be predicated on a variety of legal theories. Finding issues of fact intertwined in the elements of those causes of action, the district court denied summary judgment.

5

Next, the district court granted summary judgment in favor of Dr. Raptosh on the intentional infliction of emotional distress claim. The district court determined that, "when viewing the record and reasonable inferences in [the Schrivers'] favor, the alleged tortious conduct cannot reasonably be regarded as 'atrocious,' 'beyond all possible bounds of decency,' or otherwise so 'extreme and outrageous' as to permit recovery for [intentional infliction of emotional distress]." The district court then reserved ruling on the issue of negligent infliction of emotional distress and permitted the parties to submit supplemental briefing on the issue of whether veterinary negligence may give rise to emotional distress damages.

The last issue addressed by the district court's initial decision on the motion for summary judgment was the claim for lack of informed consent. The district court determined that this claim does not exist in a veterinary context in Idaho or any foreign state. The district court recognized that "informed consent may go to issues involving the standard of care or breach of duty" but held that it may not be pleaded as a stand-alone cause of action in a veterinary context.

After the parties had submitted further briefing on the issue of negligent infliction of emotional distress, the district court issued a written decision granting summary judgment in favor of Dr. Raptosh and Lakeshore on that claim. The district court's analysis focused primarily on the element of duty; it reached the conclusion that a veterinarian has no specific duty to avoid emotional harm to the pet's owner "absent an explicit undertaking or other special circumstance unique to the individual client[,]" and the regular course of veterinary practice does not give rise to such an undertaking or a special relationship. The district court determined that nothing in the record suggested an undertaking or special relationship beyond the veterinarian-client relationship; accordingly, the Schrivers' claim for negligent infliction of emotional distress was dismissed.

Thereafter, the Schrivers moved for permissive appeal. Over opposition from Dr. Raptosh and Lakeshore, the district court granted the motion, finding that the issues in dispute (the measure of damages for destruction of a pet cat and the recovery of non-economic damages in a veterinary context) present controlling questions of law and that an immediate appeal would materially advance the resolution of the case. The district court thus stayed the matter, and this Court entered an order granting the motion for permissive appeal.

### III. STANDARD OF REVIEW

On an appeal from a grant of summary judgment, the appellate court's standard of review is the same as the standard used by the trial court in granting the summary judgment. *Sec. Inv.*

6

*Fund LLC. v. Crumb*, 165 Idaho 280, 285–86, 443 P.3d 1036, 1041–42 (2019), *overruled on other grounds by Millard v. Talburt*, ___ Idaho ___, 544 P.3d 748 (2024). "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Est. of Becker v. Callahan,* 140 Idaho 522, 525, 96 P.3d 623, 626 (2004). "All facts and inferences from the record will be viewed in favor of the nonmoving party to determine whether the motion should be granted." *E. Lizard Butte Water Corp. v. Howell*, 122 Idaho 679, 681, 837 P.2d 805, 807 (1992) (citation omitted). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercise free review." *Becker,* 130 Idaho at 525, 96 P.3d at 626.

The determination of the correct measure of damages is a question of law this Court reviews de novo. *Gen. Auto Parts Co. v. Genuine Parts Co.*, 132 Idaho 849, 854, 979 P.2d 1207, 1212 (1999); *Basic Am., Inc. v. Shatila*, 133 Idaho 726, 745, 992 P.2d 175, 194 (1999).

### IV. ANALYSIS

**A.** **The district court did not err in denying emotional distress damages as part of the Schrivers' trespass to chattels/conversion claim.**

The Schrivers contend the district court erred by denying them the opportunity to recover emotional distress damages for their trespass to chattels/conversion claims (count one – unauthorized cystocentesis resulting in Gypsy's death; count two – unauthorized necropsy). Citing to *Gill v. Brown*, 107 Idaho 1137, 1138-39, 695 P.2d 1276, 1277-78 (Ct. App. 1985), the district court concluded that "[r]ecovery of emotional distress damages related to the death of a pet, if any, are limited to th[e] specific causes of action [of negligent and intentional infliction of emotional distress]." The Schrivers argue that no Idaho appellate court, including the Idaho Court of Appeals in *Gill*, has addressed the issue of whether a plaintiff may recover emotional distress damages for trespass to chattels/conversion in connection with the destruction of a pet. They cite to authority from other states contending this Court should hold, as a matter of law, that emotional distress damages are recoverable for the intentional torts of trespass to chattels/conversion. We are not persuaded and agree with the Idaho Court of Appeals' decision in *Gill* that the recovery of emotional distress damages in relation to a destroyed pet is limited to the independent torts of negligent or intentional infliction of emotional distress. Accordingly, there is no error in the district court's decision.

7

In *Gill*, the plaintiffs sought to recover for both property damage and mental anguish after the defendant recklessly shot and killed their donkey. *Id*. Before trial, the district court "*sua sponte* ordered th[e] claim [for emotional damages] stricken from the complaint," ruling that damages for mental anguish were not recoverable for the destruction of a pet. *Id*. The Gills appealed that decision after the district court issued an Idaho Rule of Civil Procedure 54(b) certificate of finality.

On appeal, the Idaho Court of Appeals noted that the majority of jurisdictions had denied recovery of mental anguish for the destruction of animals and concluded that it was unpersuaded to depart from that general rule. *Id*. (citing 1 A.L.R.3d 997, 1010 (1965)). However, the court recognized that a claim for emotional distress damages "may be asserted in connection with the independent torts of negligent or intentional infliction of emotional distress." *Id*. The court then concluded that the alleged facts, if proven, would permit recovery of damages for mental anguish based on a theory of intentional infliction of emotional distress and reversed the order of the district court. *Id*. at 1139, 695 P.2d at 1278.

We agree with the Schrivers that *Gill* does not directly address the issue raised here—whether emotional distress damages in relation to the destruction of a pet are recoverable as part of a claim for conversion or trespass to chattels. Nevertheless, we are not persuaded to depart from *Gill's* holding.

Importantly, the Idaho Court of Appeals in *Gill* permitted the recovery of emotional distress damages for the death of the pet donkey because the alleged conduct of the defendant in that case could be considered "extreme and outrageous," the critical element necessary for a claim of intentional or reckless infliction of emotional distress. *Id*. at 1138-39, 695 P.2d at 1277-78. In each case cited by the Schrivers in which a court permitted recovery of emotional distress damages for claims of conversion or trespass to chattels that involved a pet, there is an element of outrageousness with respect to the alleged conduct of the defendants. For example, in *Plotnick v. Meihaus*, the California Court of Appeals upheld an award of emotional distress damages after the pet owners' neighbor had taken a baseball bat and severely injured their pet dog. 146 Cal. Rpt. 3d 585, 601 (Cal. Ct. App. 2012). The California court emphasized that the defendant's conduct constituted a "malicious injury" to a pet, which is a crime, and could also give rise to the pet owners' recovery of emotional distress damages under a claim of intentional infliction of emotional distress but for "the rule against double recovery." *Id*. at 603–04.

8

Likewise, in *Fredeen v. Stride,* the Oregon Supreme Court upheld an award of emotional distress damages to a dog owner after a veterinarian had given the dog away to a third person without the owner's consent. 525 P.2d 166, 169 (Or. 1974) (en banc). The owner had brought the dog to the veterinarian for treatment after the dog had been shot in the leg while chasing sheep. *Id*. at 168. The veterinarian informed the dog owner of the high costs of surgery and explained that he was not certain the dog could recover completely even with the surgery. *Id*. Because the surgery was cost-prohibitive to the owner, and because the dog was suffering from extreme pain, the veterinarian advised that the dog be put to sleep. *Id*. The owner agreed. *Id.* However, the veterinarian did not put the dog to sleep. *Id*. Instead, the veterinarian allowed his employees to nurse the dog back to health, then gave the dog to a new owner without obtaining the consent of the owner. *Id*. For six months, the owner was under the erroneous belief that her dog had been euthanized until she saw the dog with the new owner. *Id*. In upholding the award for emotional distress damages, the Oregon Supreme Court described the veterinarian's actions as "aggravated conduct"; the court also held that such conduct constituted a "sufficiently aggravated violation of societal interests to justify the sanction of punitive damages as a preventative measure." *Id*. at 169 (quoting *Noe v. Kaiser Found. Hosp.*, 435 P.2d 306, 308 (Or. 1967)). In other words, the veterinarian's conduct in deceiving the former dog owner into believing her dog had died, then giving the dog away to a new owner without the owner's consent, is "beyond all possible bounds of decency" such that it could also constitute the tort of intentional or reckless infliction of emotional distress. *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 180, 75 P.3d 733, 741 (2003) (citing *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375 (Ariz. Ct. App. 1994)).

While outrageous conduct is an element of the tort of intentional or reckless infliction of emotional distress, it is not a required element of either the tort of trespass to chattels or conversion. The Restatement of Torts defines trespass to chattels as intentionally "(a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." Restatement (Second) of Torts § 217 (1979). Similarly, a conversion can occur when "one who is authorized to make a particular use of a chattel" uses the chattel "in a manner exceeding the authorization." Restatement (Second) of Torts § 228 (1979). A person could be dispossessed of their property, or a person could intermeddle with the property of another, in a manner that, while wrongful, is not outrageous or outside all bounds of possible decency. Likewise, a person could use another person's property in an unauthorized but not outrageous manner. Permitting an award of emotional

9

distress damages for all conduct that constitutes a trespass to chattels or conversion goes too far and is inconsistent with the weight of authority regarding the damages available for injury to, or loss or destruction of, a pet. Accordingly, we agree with the Idaho Court of Appeals that emotional distress damages for the destruction of a pet may be recovered only in connection with the independent tort of intentional infliction of emotional distress.

Here, the Schrivers pleaded claims for both intentional and negligent infliction of emotional distress in addition to their claim for trespass to chattels/conversion. The district court analyzed the Schrivers' request for emotional distress damages as part of the emotional distress claims, an approach consistent with our opinion today. We therefore affirm the district court's denial of emotional distress damages as part of the claim for trespass to chattels/conversion.

**B.      The district court properly granted summary judgment as to the Schrivers' negligent infliction of emotional distress claim.**

The Schrivers next contend the district court erred by granting summary judgment in favor of Dr. Raptosh and Lakeshore on the negligent infliction of emotional distress claim. While the Schrivers concede that most jurisdictions do not permit a negligent infliction of emotional distress claim for the death of an animal (whether caused by a veterinarian or other actor), they assert that the law of Idaho, since the *Gill* decision in 1985, has been to permit such a claim. They argue that the district court's conclusion that veterinarians owe no duty of care to prevent emotional harm to the owners of pets entrusted into the veterinarian's care is counter to the law of negligence in Idaho. We disagree.

"Idaho recognizes the tort of negligent infliction of emotional distress." *Knudsen v. J.R. Simplot Co.*, 168 Idaho 256, 271, 483 P.3d 313, 328 (2021). A claim for negligent infliction of emotional distress, which is simply a specific version of the tort of negligence, requires the same elements as does a common law negligence action. *Johnson v. McPhee*, 147 Idaho 455, 466, 210 P.3d 563, 574 (Ct. App. 2009). These elements are: "(1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage." *Frogley v. Meridian Joint Sch, Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013) (citations omitted). In addition, the plaintiff must demonstrate a physical manifestation of the emotional injury, "which is designed to provide a degree of genuineness that claims of mental harm are not imagined." *Id*. (citing *Czaplicki v. Gooding Joint Sch. Dist. No*. 231, 116 Idaho 326, 332, 775 P.2d 640, 646 (1989)).

"The existence of a duty is a question of law over which this Court exercises free review." *Turpen v. Granieri*, 133 Idaho 244, 247, 985 P.2d 669, 672 (1999). "A legal duty is one recognized by law that requires the defendant to conform to a certain standard of conduct." *Hatheway v. Bd. of Regents of Univ. of Idaho*, 155 Idaho 255, 270, 310 P.3d 315, 330 (2013). Thus, a plaintiff in a negligence action must demonstrate both the existence of a legal duty and the defendant's breach of that duty, as well as damages caused by the defendant's breach. *See Taylor v. Riley*, 157 Idaho 323, 339, 336 P.3d 256, 272 (2014); *Udy v. Custer Cnty.*, 136 Idaho 386, 389, 34 P.3d 1069, 1072 (2001).

"Under Idaho law, 'one owes the duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury.' " *Henrie v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 162 Idaho 204, 208, 395 P.3d 824, 828 (2017) (emphasis omitted) (quoting *Doe v. Garcia*, 131 Idaho 578, 581, 961 P.2d 1181, 1184 (1998)). However, absent unique, special, or unusual circumstances justifying the imposition of an affirmative responsibility, "[t]here is ordinarily no affirmative duty to act to assist or protect another . . . ," regardless of foreseeability. *Id.*; *Beers v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 155 Idaho 680, 686, 316 P.3d 92, 98 (2013).

Foreseeability depends on the circumstances of each case:

> Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required.

*Sharp v. W. H. Moore, Inc.*, 118 Idaho 297, 300-01, 796 P.2d 506, 509-10 (1990). A court only engages in a "balancing of the harms" as described in *Sharp* in situations where it is asked "to extend a duty beyond the scope previously imposed, or when a duty has not previously been recognized." *Rife v. Long*, 127 Idaho 841, 846-57, 908 P.2d 143, 148-49 (1995). The determination of whether to extend a duty or impose a duty in a particular instance requires application of a two-part framework. *GSN Cap., LLC v. Shoshone City & Rural Fire Dist.*, 173 Idaho 271, 280, 541 P.3d 703, 712 (2024). A court must first determine that there is a legal basis for the duty, such as the unique circumstance of a special relationship between the parties. *Id.* at 282, 541 P.3d at 714. "[T]he hallmarks of a special relationship [are] custody and control[.]" *Id.* Only if the court determines that the defendant had custody and control over the plaintiff or the plaintiff's property

11

may the court move to the second part of the framework, consideration of concerns and weighing the *Rife* factors:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Rife*, 127 Idaho at 846, 908 P.2d at 148 (alteration in original) (quoting *Isaacs v. Huntington Mem. Hosp.*, 695 P.2d 653, 658 (Cal. 1985)).

In this case, the district court recognized that the Schrivers' negligent infliction of emotional distress claim involves a request to extend or impose a duty in a new context, requiring a veterinarian to prevent emotional distress in a pet owner. The district court recognized that "most jurisdictions do not permit recovery of emotional distress or loss of companionship damages for a pet negligently killed." The district court then concluded that, based on the weight of authorities, consideration of the pertinent *Rife* factors, and policy concerns, a veterinarian has no legal duty "to prevent emotional distress to pet owners when rendering professional services."

The Schrivers raise three arguments in support of their contention that the district court erred in reaching this conclusion: (1) the general duty to avoid causing a foreseeable injury already includes a duty to prevent foreseeable emotional harm; (2) the veterinarian's duty to provide veterinary care to a pet in accordance with the applicable standard of care includes a duty to protect the pet owner's emotional well-being; and (3) the veterinarian-pet owner relationship is a "special relationship" that gives rise to an affirmative duty to prevent emotional harm to pet owners. Each argument is addressed in turn.

1. *The general duty to avoid injury to others does not include a legal duty to prevent emotional harm in all circumstances.*

The Schrivers first contend that the district court erred in analyzing a veterinarian's legal duty to prevent emotional harm. The Schrivers argue that "there is no doctrinal speedbump to application of [negligent infliction of emotional distress] other than the malingerer-exposing element of proof of physical manifestations[,]" and "[n]o other test has ever been imposed under Idaho law." They cite to *Gill* in support of this argument, noting that the court affirmed the dismissal of the claim for negligent infliction of emotional distress for no other reason than the

plaintiff's lack of physical manifestations of distress following the shooting of their pet donkey. 107 Idaho at 1138, 695 P.2d at 1277. But *Gill* is not instructive here. The *Gill* decision did not address whether a duty to avoid emotional harm could exist in that case at all. Instead, the claim was resolved on other grounds: the plaintiffs did not allege physical manifestations of distress. *Id*. The *Gill* decision's lack of discussion on the duty element cannot be read to hold that a duty to avoid emotional harm did, or did not, exist in that case; at any rate, it has no bearing on whether a duty to prevent emotional harm exists in a veterinary context, which is the issue in *this* case. Thus, the Schrivers' reliance on *Gill* is misplaced.

The Schrivers' contention that the critical element of a negligent infliction of emotional distress claim, that there be a physical manifestation of that distress, is contradicted by well-established caselaw. A claim for negligent infliction of emotional distress is subject to a five-part test, often focused on the first element of duty. *See*, *e.g.*, *Frogley v. Meridian Joint Sch. Dist. No. 2*, 155 Idaho 558, 569, 314 P.3d 613, 624 (2013); *Nation v. State Dep't. of Corr.*, 144 Idaho 177, 189, 158 P.3d 953, 965 (2007). The Schrivers recognize that a claim for negligent infliction of emotional distress requires a duty recognized by law, but their argument goes too far in suggesting that *everyone* owes a duty to prevent foreseeable emotional harm to *anyone*. Their position fails to account for this Court's holding in *Beers* that "[t]here is ordinarily no affirmative duty to act to assist or protect another . . . ," regardless of foreseeability. 155 Idaho 680, 686, 316 P.3d 92, 98 (2013). Absent unusual circumstances, the law "does not impose an affirmative duty on everyone to prevent foreseeable injury to everyone else." *Id*. at 685, 316 P.3d at 98 (2013). The general duty to avoid causing foreseeable harm to others applies when the injury is the direct and natural consequence of a failure to exercise reasonable care in one's own actions and the failure to exercise reasonable care causes injury to another. *See GSN Cap.*, 173 Idaho at 278, 541 P.3d at 710*; Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 401, 987 P.2d 300, 313 (1999) (explaining that the general duty to avoid causing foreseeable harm did not apply to sorority members who allegedly failed to protect the plaintiff but did not affirmatively injure the plaintiff). As explained in more detail in subpart 3 below, Andrea's alleged emotional distress is, at best, an *indirect* consequence of Dr. Raptosh's injury to Gypsy.

Accordingly, the Schrivers cannot rely on the general duty to avoid causing *direct* harm to recover on their claim for negligent infliction of emotional distress.

13

*2. The standard of care for veterinary practice does not impose an affirmative duty of care to protect a pet owner's emotional well-being.*

The Schrivers next contend that there is an unusual circumstance sufficient to impose an affirmative duty on veterinarians to prevent emotional harm to pet owners. Namely, they point to the applicable standard of veterinary care provided by the rules of the Idaho Board of Veterinary Medicine, IDAPA 24.38.01.151 (2023), and the Idaho Veterinary Practice Act, title 54, chapter 21, Idaho Code, as a source for a duty imposed by statute. In order for a duty of care to arise by statute, the following elements must be met: "(1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury." *Obendorf v. Terra Hug Spray Co.*, 145 Idaho 892, 899, 188 P.3d 834, 841 (2008) (quoting *O'Guin v. Bingham Cnty.*, 142 Idaho 49, 52, 122 P.3d 308, 311 (2005)). The Idaho Veterinary Practice Act provides the licensing and disciplinary standards for veterinarians. Under Idaho Code section 54-2115, a veterinarian may be disciplined for violating the rules of professional conduct under IDAPA 24.38.01.151 and 152 or violating the applicable standards of veterinary practice, as outlined in IDAPA 24.38.01.153. These statutes and regulations define the standards of conduct with respect to a veterinarian's treatment of an *animal,* the veterinarian's patient. Thus, they impose a duty on a veterinarian to engage in professional conduct and competently treat animals in a manner that is consistent with the applicable standards of care. However, there is no indication that the defined standards of conduct were intended to prevent a pet owner's emotional distress. Accordingly, the Schrivers have failed to establish the second element of a statutory duty. Dr. Raptosh had no affirmative duty to prevent emotional harm to Andrea simply by way of his duty to follow the applicable standard of veterinary care in treating Gypsy.

*3. The veterinarian-pet owner relationship is generally not a special relationship that imposes an affirmative duty on the veterinarian to protect the pet owner's emotional well-being.*

The Schrivers' third and final argument in support of their contention that the district erred in holding that veterinarians owe no legal duty to prevent emotional harm to pet owners is that the veterinarian-client relationship creates a unique circumstance, specifically, a special relationship, that imposes an affirmative duty of care on veterinarians to protect a pet owner's emotional well-

being. A special relationship is a legal term of art describing a unique circumstance that will impose an affirmative duty of care on another. *Beers*, 155 Idaho at 686, 316 P.3d at 98. Idaho recognizes two circumstances in which a special relationship exists: (1): "[when] a special relation exists between the actor and a third person which imposes a duty upon the actor to control the third person's conduct," or (2) "[when] a special relation exists between the actor and the other which gives the other a right to protection." *Id*. (quoting *Turpen*, 133 Idaho at 248, 985 P.2d at 673). This case does not involve any alleged conduct of a third party; all allegations in this case concern Dr. Raptosh's conduct, directed at Gypsy and/or the Schrivers; thus, the first circumstance is not applicable here. However, the Schrivers argue that the second circumstance is applicable because veterinarians are aware "that negligently harming or killing the animal will cause predictable mental anguish in the client."

This argument has been raised, and rejected, in other states. *See, e.g., McMahon v. Craig*, 97 Cal. Rprt. 3d 555, 563 (Cal. Ct. App. 2009) (rejecting pet owner's contention that a veterinary practice "undertook a duty to protect her emotional health when they agreed to provide veterinary care to [her dog] after learning of [pet owner's] special bond to her dog"); *Kaufman v. Langhofer*, 222 P.3d 272, 276 (Ariz. Ct. App. 2009) (holding that veterinarian's negligence did not directly harm pet owner in a manner sufficient to permit recovery of emotional damages). We join those states in holding that the veterinarian-pet owner relationship, by itself, does not create a special relationship sufficient to impose a duty on the veterinarian to protect a pet owner's emotional well-being.

In support of their argument that the veterinarian-pet owner relationship is a special relationship that imposes an affirmative duty on the veterinarian to protect the pet owner's emotional well-being, the Schrivers cite to *Brown v. Mathews Mortuary*, 118 Idaho 830, 835–38, 801 P.2d 37, 42-45 (1990) (applying negligent infliction of emotional distress to the loss of the cremated remains of a human), and *Levy v. Only Cremations for Pets, Inc.*, 271 Cal. Rptr. 3d 250, 262–63 (Cal. Ct. App. 2020) (applying negligent infliction of emotional distress to the loss of cremated pet remains). They argue that if a claim for negligent infliction of emotional distress is allowed against a pet crematorium for loss of the pet's remains when the crematorium played no role in the pet's death, it would be strange to deny the same claim against a veterinarian who "negligently caused the animal to perish in first place." The Schrivers' reliance on *Levy* is misplaced, however, as the court in that case specifically distinguished the duty undertaken by a

15

crematorium from the duty undertaken by a veterinarian: "While we recognize that the owner's emotional harm might be foreseeable from veterinary malpractice, the veterinarian's medical care is directed only to the pet." *Id.* at 219. In contrast, with private crematoriums, whether for humans or for pets, "[e]motional harm was not merely foreseeable from [the crematorium's] negligence, plaintiff's emotional well-being was the product it was selling." *Id.* at 220. We agree with the *McMahon* and *Levy* courts that the foreseeability of emotional harm to pet owners resulting from negligent veterinary care is, by itself, insufficient to establish an affirmative duty of care to protect the pet owner's emotional well-being.

"[A]lthough a veterinarian is hired by the owner of a pet, the veterinarian's medical care is directed only to the pet." *McMahon*, 97 Cal. Rprt. 3d at 561. Thus, the pet owner is not the direct victim of negligent veterinary care; the pet is. Contrary to the Schrivers' contention, the veterinarian-pet owner relationship is not analogous to a doctor-patient relationship, because the pet owner is not the patient. Instead, the veterinarian-pet owner relationship is contractual: the pet owner is responsible for payment, and the veterinarian is responsible for providing appropriate veterinary services to the pet. Accordingly, the veterinarian's duty of care *is owed to the pet*, and his duty to the pet owner is to provide such appropriate care to the pet. Because the pet owner is not the direct recipient of veterinary care, nothing inherent in the veterinarian-pet owner contractual relationship indicates that the veterinarian also owes a duty to care for the pet owner's emotional health. Therefore, the contractual arrangement between the Schrivers and Dr. Raptosh and Lakeshore to treat Gypsy is insufficient to demonstrate that Dr. Raptosh had an affirmative duty to protect Andrea's emotional well-being.

Likewise, the veterinarian-pet owner relationship does not feature the hallmark characteristics of a special relationship—custody and control—necessary to establish an affirmative duty to prevent emotional harm to pet owners. *See GSN Cap.*, 173 Idaho at 282, 541 P.3d at 714. While a veterinarian, such as Dr. Raptosh, would have custody and control over the pet, this is sufficient only to permit the pet owner to recover for harm done to the pet. A veterinarian does not have custody and control over the pet owner. Accordingly, a veterinarian does not have a special relationship with the pet owner.

Regardless of the foreseeability of a pet owner's emotional distress upon the loss of a beloved pet, the law has not recognized a duty owed by veterinarians to prevent emotional harm to pet owners, and we find no legal basis for imposing such a duty. The Schrivers have failed to

establish the existence of a special relationship between Dr. Raptosh or Lakeshore and Andrea. Thus, the first prong of the two-part framework for recognizing a new legal duty is not satisfied, and we need not address the second prong, consideration of the *Rife* factors. If the Schrivers desire such a duty to be recognized, they will have to utilize the legislative process.

Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of Dr. Raptosh and Lakeshore on the Schrivers' claim for negligent infliction of emotional distress.

## C. The district court erred in granting summary judgment in favor of Dr. Raptosh and Lakeshore on the intentional infliction of emotional distress claim.

The Schrivers next contend that the district court erred by granting summary judgment in favor of Dr. Raptosh and Lakeshore on their claim for intentional infliction of emotional distress after determining that "the alleged tortious conduct cannot reasonably be regarded as 'atrocious,' 'beyond all possible bounds of decency,' or otherwise so 'extreme and outrageous' as to permit recovery for [intentional infliction of emotional distress]." They argue that their allegations that Dr. Raptosh "recklessly killed Gypsy and then intentionally cut her body open post-mortem over the highly emotive and clearly distraught objection of the client" are sufficient to demonstrate "extreme and outrageous" conduct. The Schrivers argue most jurors would be "shocked" by these allegations and contend that when Dr. Raptosh's conduct is viewed in the context of his role as veterinarian, where he had fiduciary and ethical obligations to act in a professional manner consistent with appropriate veterinary standards of practice, a factual question arises as to the issue of outrageousness that precludes summary judgment. We agree with the Schrivers that this question should be decided by a jury.

To establish a viable claim for intentional infliction of emotional distress, the plaintiff must prove four elements: (1) intentional or reckless conduct; (2) the conduct must also be extreme and outrageous; (3) a causal connection between wrongful conduct and the emotional distress; and (4) severe emotional distress. *McKinley v. Guar. Nat'l Ins. Co.,* 144 Idaho 247, 253, 159 P.3d 884, 891 (2007) (citing *Est. of Becker v. Callahan*, 140 Idaho 522, 527, 96 P.3d 623, 628 (2004)). "The district court acts as a gatekeeper . . . , weeding out weak causes of action." *Id.* (citing *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 180, 75 P.3d 733, 741 (2003)). The district court must first determine whether the defendant's conduct, as alleged, "may reasonably be regarded as so extreme and outrageous to permit recovery[.]" *Id.* (citation omitted). If, based upon the facts as

17

alleged, no reasonable minds could conclude that the defendant's conduct was so extreme and outrageous to permit recovery for intentional infliction of emotional distress, then the district court may properly grant summary judgment in the defendant's favor. *Id.*

This Court has explained that a claim for intentional infliction of emotional distress requires "very extreme conduct"; accordingly, the burden of proving the "extreme and outrageous" element is a high burden. *See Hatfield v. Max Rouse & Sons Nw.*, 100 Idaho 840, 850, 606 P.2d 944, 954 (1980)*, overruled on other grounds by Brown v. Fritz,* 108 Idaho 357, 359–60, 699 P.2d 1371, 1373–74 (1985)). To qualify as extreme or outrageous, the conduct must be beyond "unjustifiable." *Id.*; *see also Johnson*, 147 Idaho at 464, 210 P.3d at 572. "[I]t must rise to the level of 'atrocious' and 'beyond all possible bounds of decency,' such that it would cause an average member of the community to believe that it was outrageous." *Johnson*, 147 Idaho at 464, 210 P.3d at 572 (quoting *Edmonson*, 139 Idaho at 180, 75 P.3d at 741). In *Alderson v. Bonner,* we provided a brief recitation of the types of outrageous conduct sufficient for liability under a claim for intentional infliction of emotional distress:

> The outrageousness that will justify liability under this tort is illustrated in a number of Idaho cases, including *Walston,* 129 Idaho 211, 923 P.2d 456 (insurance company's unfair dealings with a grieving widower); *Curtis v. Firth,* 123 Idaho 598, 850 P.2d 749 (1993) (prolonged physical, mental, and sexual abuse); *Gill v. Brown,* 107 Idaho 1137, 695 P.2d 1276 (Ct.App.1985) (recklessly shooting and killing a donkey that was both a pet and a pack animal); *Spence,* 126 Idaho 763, 890 P.2d 714 (real estate developers swindling a family out of their "life long dream"). By contrast, in some cases where conduct was arguably unjustifiable, it was nevertheless held not to be sufficiently outrageous or extreme for liability, *e.g., Brown v. Matthews Mortuary, Inc.,* 118 Idaho 830, 801 P.2d 37 (1990) (loss of corpse was not extreme or outrageous); *Hatfield,* 100 Idaho at 850–51, 606 P.2d at 954–55 (auctioneer's sale of equipment at "ruinous" price below minimum set by seller, and issuance of multi-payee settlement check that caused intra-family conflict); *Payne,* 136 Idaho 303, 32 P.3d 695 (belligerent yelling of profanities in presence of a child after an automobile accident).

142 Idaho 733, 740, 132 P.3d 1261, 1268 (2006).

Here, the district court recognized that *Gill* permitted an intentional infliction of emotional distress claim based upon the reckless shooting and killing of a pet donkey, but concluded that the alleged conduct in this case could not "reasonably be regarded as 'atrocious'" or "beyond all bounds of decency," and "reasonable minds could not differ on whether the alleged conduct was 'extreme and outrageous' as defined by law." However, the district court did not analyze the Schrivers' claims against Dr. Raptosh and Lakeshore to explain which conduct was, or was not,

18

"outrageous" and why. There is no discussion of the degree of outrageousness with respect to Dr. Raptosh's performance of the cystocentesis, or the degree of outrageousness with respect to the necropsy. We see the alleged malpractice and the alleged unauthorized necropsy as two distinct claims that warrant independent analysis.

While we recognize that the evidence relating to Gypsy's death as a result of Dr. Raptosh's performance of cystocentesis may be sufficient to demonstrate questions of fact regarding negligent conduct, the evidence does not demonstrate conduct so extreme and outrageous to give rise to a claim for intentional infliction of emotional distress. Thus, we agree with the district court that there are no grounds for an intentional infliction of emotional distress claim as it relates to the cystocentesis.

In contrast, while we recognize that the facts are disputed by the parties, we conclude reasonable minds *could* differ on whether a veterinarian's alleged performance of a necropsy against the explicit will and instruction of the pet's owner, and after the owner has demonstrated her heightened emotional state to the veterinarian, is "extreme and outrageous." Performing an unauthorized necropsy interferes with both the pet owner's autonomy over the proper handling of the pet's remains and the pet owner's grief process. A reasonable jury could conclude that this conduct is even more egregious when the pet owner not only alleges that she did not expressly authorize the necropsy, but explicitly refused such consent and instructed the veterinarian to wait for authorization from her husband before taking *any* further actions with respect to her deceased cat. Therefore, we agree with the Schrivers that whether the Idaho public would be sufficiently "shocked" by such an action from a veterinarian to permit recovery for intentional or reckless infliction of emotional distress is an appropriate question for the jury.

Accordingly, we reverse the district court's grant of summary judgment in favor of Dr. Raptosh and Lakeshore on the intentional or reckless infliction of emotional distress claim and remand this case for further proceedings as to that issue.

**D.      The district court did not err in granting summary judgment in favor of Dr. Raptosh and Lakeshore on the claim for lack of informed consent.**

The Schrivers' final contention on appeal concerns their claim for lack of informed consent, which the district court dismissed in granting summary judgment in favor of Dr. Raptosh and Lakeshore. The district court concluded that such a claim does not exist in the veterinary context but held that informed consent "may go to issues involving the standard of care or breach of duty" as related to the Schrivers' professional negligence claim. The Schrivers contend that the

lack of informed consent is cognizable as related to veterinary malpractice or a breach of the standard of care; they argue that there is no logical reason why such a cause of action should not exist in the veterinary context when it does in the human health care context. We disagree.

Under the Medical Consent and Natural Death Act, Idaho Code section 39-4501, lack of informed consent is a statutory cause of action in Idaho as related to human health care. That statute concerns consent for hospital, medical, dental, surgical, and other health care services as related to people. *See* I.C. § 39-4503 and -4504, titled "*Persons* who may consent to their own care" and "*Persons* who may consent to care of others," respectively. (Emphasis added). Under section 39-4504(1), persons consenting to the care of others furnish such consent on behalf of a *person* who is not capable of giving such consent, such as a minor. The person giving such consent is the "surrogate decision-maker," defined under section 39-4502(20) as "the person authorized to consent to or refuse health care services for another person as specified in section 39-4504(1), Idaho Code." A pet is not a person. Accordingly, lack of informed consent in a veterinary context is not covered under this statutory cause of action.

There is no common law cause of action for lack of informed consent in Idaho. *See generally Foster v. Traul*, 141 Idaho 890, 894, 120 P.3d 278, 282 (2005) (citing I.C. § 39-4501). The Schrivers cite a variety of authority from other jurisdictions to suggest that lack of informed consent is pertinent evidence of a breach of the duty of care in a veterinary malpractice or professional negligence case. *See Gonalez v. S. Texas Veterinary Assoc., Inc*., No. 13-12-00519-CV, 2013 WL 6729873 * 1, *3-5 (Tex. App. Dec. 19, 2013) (holding that lack of informed consent related to the vaccination of small animals is evidence of veterinary malpractice sufficient to withstand summary judgment); *Lawrence v. Big Creek Vet. Hosp., LLC*, 2007 WL 2579436, *3-4 (Ohio Dist. 11 Sept. 7, 2007) (holding that the trial court erred in prohibiting evidence regarding the informed consent given by veterinarians). However, none of these cases is published, none of the cited cases definitively permitted a stand-alone cause of action for lack of informed consent in the veterinary context, and there is no indication that any jurisdiction has recognized this as an independent claim. In addition, the conclusion from these cases that the lack of informed consent in a veterinary context is evidence of a breach of duty in a professional negligence claim is consistent with the district court's holding below. The Schrivers may present evidence of their lack of informed consent for both the cystocentesis as well as the necropsy performed on Gypsy to

20

support their claims, but they may not plead an independent cause of action for lack of informed consent.

In conclusion, the district court did not err in concluding that the lack of informed consent in a veterinary context is not a standalone cause of action in Idaho. Accordingly, we affirm the district court's grant of summary judgment in favor of Dr. Raptosh and Lakeshore on this issue.

**E.** **The district court did not err in determining that the measure of damages for a pet cat is the "value to the owner"; and such value does not include sentimental value.**

On cross-appeal, Dr. Raptosh and Lakeshore contend the district court erred by employing a "value to owner" measure of damages for the loss of Gypsy and denying their request for an order limiting damages for the loss of Gypsy to fair market value. Because Gypsy was an animal, and thus property, Dr. Raptosh and Lakeshore argue the correct measure of damages is fair market value (which Dr. Raptosh asserts does not exceed $200). Dr. Raptosh and Lakeshore argue that a "value to owner" measure of damages for the loss of Gypsy is "unworkable" because her value to the Schrivers was "both literally and figuratively immeasurable." Accordingly, Dr. Raptosh and Lakeshore express concern that such a measure of damages will become, in effect, sentimental value. Because we agree with the district court's conclusion that Gypsy had no fair market value, we affirm the district court's decision to employ a "value to owner" measure of damages for the Schrivers' loss of her. However, we clarify that such damages do not include any compensation for loss of companionship or sentimental value.

Pets are classified as personal property under Idaho law. *See Zenier v. Spokane Int'l R.R. Co.*, 78 Idaho 196, 300 P.2d 494 (1956); *Gill v. Brown*, 107 Idaho 1137, 695 P.2d 1276 (Ct. App. 1985); I.C. § 25-2807. When personal property is destroyed by the tortious conduct of another, ordinarily the measure of damages is fair market value at the time of the property's destruction. *Bratton v. Slininger*, 93 Idaho 248, 251, 460 P. 2d 383, 386 (1969). "It is a well settled rule in this state that the owner of property is a competent witness to its value." *Id.* If personal property has no fair market value, then "its value to the owner may be used as a basis for determining damages." *Id.* Thus, although fair market value is the ordinary measure of damages for destroyed property, "where the property is not salable, or its salable value would not be adequate compensation, the value to the owner will be accepted." *Id.* (citing *McCormick on Damages*, § 45 at 170 (1935)).

Here, the district court determined that "[t]here is no dispute that Gypsy had no fair market value at the time of death." Although Dr. Raptosh contends that the Schrivers could obtain a

replacement kitten for $200 or less, he did not dispute that *Gypsy*, a particular four-year-old cat (not a kitten) had a zero-dollar value, and thus, was not "salable" at the time of her death. While the fair market value is the amount of money that could be obtained for the item in an open marketplace, that value may not be the same as the value of a similar, replacement item. The fair market value of a lost or destroyed item is the fair market value of the *actual*, *particular* item that was destroyed, not the cost of obtaining something *like* it. Accordingly, the district court did not err in determining that Gypsy had no fair market value.

Because Gypsy had no fair market value, the district court did not err in permitting a "value to owner" measure of damages. This is consistent with this Court's long-standing recognition of the value to owner measure of damages for destroyed personal property that had a zero-dollar value at the time of destruction, as explained in *Bratton*, 93 Idaho at 251, 460 P.2d at 386. Applying this measure of damages to the loss of a pet is also nothing new. This Court has acknowledged that value to owner may be used as a measure of damages in a civil action related to the loss of an animal for over 100 years. *See State v. Churchill*, 15 Idaho 645, 98 P. 853 (1909). *Churchill* involved an appeal of a criminal conviction for the malicious slaying of a dog, which was ultimately reversed for lack of evidence establishing such malicious conduct. *Id*. at 656-57, 98 P. at 857. However, in distinguishing the evidence in the civil trial for damages related to the killing of the dog from the evidence admitted in the criminal trial, this Court noted that "[i]n an action for damages, evidence of the pedigree, habits, traits, and reputation of the dog is important in determining his value to his owner." *Id*. at 655, 98 P. at 857. We reaffirm this understanding of value to owner as applied to pets today: A pet's value to its owner includes the actual, pecuniary value of the pet's unique characteristics, including its pedigree, habits, traits, and reputation. It does not, however, include the pet's sentimental value, nor does it permit recovery for the owner's loss of the pet's companionship.

We agree with the Texas Supreme Court that the loss of a pet's companionship, while sorrowful, is not compensable. *Strickland v. Medlen,* 397 S.W.3d 184, 193 (Tex. 2013). In *Strickland*, the court applied a similar measure of damages, "special or pecuniary value to the owner," to the loss of pet dog negligently killed. *Id*. at 189-90. The court explained that such value is economic, not sentimental, and does not permit recovery for loss of companionship:

> [A] dog's "special or pecuniary value" refers not to the dog-human bond but to the dollars-and-cents value traceable to the dog's usefulness and services. Such value is economic value, not emotional value based on affection, attachment, or

22

companionship. … and does not refer to a dog's ability to combat loneliness, ease depression, and provide security. The valuation criteria is [sic] not emotional and subjective; rather it is commercial and objective.

*Id*. at 189.

Similarly, the Restatement of Torts, while recognizing pecuniary value to the owner, also does not permit recovery of sentimental value. Restatement (Second) of Torts § 911, cmt. e (1979). The Restatement approach recognizes that some items have greater value to their owner than they would in an open market because other people could not or would not employ the thing to the same degree of usefulness, such as a personal manuscript or a dog trained to obey only its owner or handler. *Id*. In cases involving loss or destruction of such items, "it would be unjust to limit the damages . . . to the exchange value." *Id*. Nevertheless, "damages cannot be based on sentimental value." *Id*.

We conclude that the district court did not err in determining the value to owner measure of damages for the loss of Gypsy. We recognize the strong emotional bonds people form with their pets, whether cats, dogs, or some other animal. We understand that the benefit of owning such a pet is not economic, but relational, and we empathize with all pet owners when they lose that relationship. Nevertheless, we must also recognize that in the eyes of the law pets are property, and we must treat them as such here. The economic value to the owner, which includes evidence of a pet's pedigree, habits, traits, and reputation, but not sentimental value, is the appropriate measure of damages for loss of a pet when the pet has no fair market value.

**F.      Dr. Raptosh and Lakeshore are not entitled to attorney fees on appeal under Idaho Code section 12-120(3).**

Dr. Raptosh and Lakeshore request attorney fees under Idaho Code section 12-120(3) as the prevailing party in this appeal, which they argue is a case arising out of a commercial transaction. Section 12-120(3) provides for the recovery of attorney fees to the prevailing party in a civil action where a "commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Blimka v. My Web Wholesaler, LLC,* 143 Idaho 723, 728, 152 P.3d 594, 599 (2007) (quoting *Brower v. E.I. DuPont De Nemours & Co.,* 117 Idaho 780, 784, 792 P.2d 345, 349 (1990)). However, Dr. Raptosh and Lakeshore are not a prevailing party here for purposes of section 12-120(3) because the underlying civil action is still pending before the trial court. "[T]he prevailing party determination is based on the action as a whole." *Tricore Invs., LLC v. Est. of Warren through ex. Rel. Warren*, 168 Idaho 596, 630, 485 P.3d 92, 126

(2021) (alteration in original) (quoting *City of Middleton v. Coleman Homes, LLC*, 163 Idaho 716, 732, 418 P.3d 1225, 1232 (2018)). "The question is not to be examined claim-by-claim." *Id*. (quoting *Coleman Homes, LLC*, 169 Idaho at 732, 418 P.3d at 1232). "The determination should be based on what party prevailed on the 'primary issues of [the] litigation.' " *Id*. (alteration in original) (quoting *Coleman Homes, LLC*, 169 Idaho at 726, 418 P.3d at 1235). The primary issue of this litigation, whether Dr. Raptosh and Lakeshore are liable for damages to the Schrivers for the loss of Gypsy, is yet to be resolved at trial. "[A]ny determination of the prevailing party is premature until the case is finally resolved." *Christiansen v. Potlatch #1 Fin. Credit Union*, 169 Idaho 533, 544, 498 P.3d 713, 724 (2021) (quoting *City of McCall v. Buxton*, 146 Idaho 656, 667, 201 P.3d 629, 640 (2009)). Consequently, we decline to award Dr. Raptosh and Lakeshore attorney fees on appeal. If Dr. Raptosh and Lakeshore prevail at trial, the district court may determine whether an award of attorney fees for this appeal is appropriate under the statute.

## V. CONCLUSION

We affirm the district court's decision denying emotional distress damages for the trespass to chattels/conversion claim, and we affirm the district court's grant of summary judgment in favor of Dr. Raptosh and Lakeshore on the negligent infliction of emotional distress claim and on the claim for lack of informed consent. However, the district court's grant of summary judgment in favor of Dr. Raptosh and Lakeshore on intentional infliction of emotional distress related to the allegedly unauthorized necropsy is reversed, and that claim is remanded to the district court for further proceedings consistent with this opinion. The district court's decision to apply the value to owner measure of damages for the loss of the Schrivers' cat is affirmed. The Schrivers are entitled to costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices MOELLER, ZAHN, and MEYER CONCUR.